LOCAL NO. 1 (ACA), BROADCAST EMPLOYEES OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, William Bender, Morton Borrow, Walter Jost and Anthony Evasew, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Frank E. Fitzsimmons, General President, Edward Nangle, Vice President, Highway Truck Drivers and Helpers Local 107, Louis J. Bottone, President, Local 107, and John E. Smalley, Defendants.

William BENDER, Plaintiff,

v.

HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL 107, Defendant.

Civ. A. Nos. 75–2684, 80–0534.

United States District Court,
E. D. Pennsylvania.

July 27, 1982.

Harry Lore, Philadelphia, Pa., for plaintiffs.

William J. Einhorn, Sagot & Jennings, Philadelphia, Pa., Barry W. Levine, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDERS

BECKER, Circuit Judge.[*]

### I. *Preliminary Statement*

In an opinion earlier in this protracted litigation, the Court of Appeals vacated, for lack of pendent jurisdiction, a money judgment on a back salary claim that we had entered in favor of plaintiff William Bender against Teamsters Local 107. The Court of Appeals also remanded the case to us under 28 U.S.C. § 1653[1] to consider whether Bender could retain his judgment by amending his pleadings to allege diversity jurisdiction. This opinion, which follows several post-remand hearings, addresses the question whether diversity jurisdiction exists in that case (C.A. 75–2684) and in a related case (C.A. 80–0534).

Bender had for many years served as secretary-treasurer and business agent for Local 1 (ACA), a small local representing workers in the radio broadcast and insurance industries. Because of its miniscule size, Local 1 was merged into Local 107, a large truck drivers local, by order of the International Brotherhood of Teamsters (IBT). This suit was brought in 1975 by Local 1, Bender, and a number of other officers of Local 1 against IBT and Local 107 under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enjoin IBT's order of merger. Invoking our pendent jurisdiction, Bender also pleaded a claim against IBT and Local 107 for salary allegedly owed to him for services rendered on behalf of Local 1 members both before and after the merger order. The IBT filed a counterclaim seeking enforcement of the merger order. After an extensive hearing, we denied plaintiffs' motion for a preliminary injunction against the merger order. *Local No. 1 (ACA), et al. v. International Brotherhood of Teamsters, et al.*, 419 F.Supp. 263 (E.D.Pa.1976). No appeal was taken. Following trial on the merits, we entered judgment for IBT on its counterclaim, thereby upholding the merger.[2] We also awarded to Bender that portion of his salary claim accruing prior to the merger. *Local No. 1 (ACA), et al. v. International Brotherhood of Teamsters, et al.*, 461 F.Supp. 961 (E.D.Pa.1978).

The Court of Appeals affirmed that portion of our judgment that upheld the merger order. *Local No. 1 (ACA), et al. v. International Brotherhood of Teamsters, et al.*, 614 F.2d 846 (3d Cir. 1980). However, notwithstanding its admittedly intimate relationship to the section 301 claim, in terms of actual trial evidence, the Court disapproved our exercise of pendent jurisdiction over Bender's salary claim because the complaint did not demonstrate a common nucleus of operative facts on its face. *Id.* at 851. The Court accordingly vacated the judgment in favor of Bender and ordered dismissal of the salary claim for lack of jurisdiction. Bender subsequently moved to amend his pleadings under 28 U.S.C. § 1653 to allege diversity jurisdiction. The Court of Appeals granted the motion, remanded the case to us to determine whether diversity existed, and retained jurisdiction over the action pending our determination. *Id.* at 853.

---

[*] Of the United States Court of Appeals for the Third Circuit, sitting by designation. At the time of the proceedings adjudicated herein, Judge Becker sat as a Judge of the United States District Court for the Eastern District of Pennsylvania.

1. Section 1653 states: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

2. Concomitantly, we entered judgment for defendants on the plaintiffs' claim seeking a permanent injunction.

Bender is a citizen of New York. The IBT has members in New York (as well as many other states) and, under *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), which assigns to an unincorporated association the citizenship of each of its members, is concededly a citizen of New York. Recognizing that diversity jurisdiction is destroyed if the IBT remains a party, Bender filed an amended complaint after remand which dropped the claim challenging the merger and dropped all other parties plaintiff and defendant, leaving Bender as the sole plaintiff and Local 107 as the sole defendant in the case. The theory of the amended complaint is that diversity is present because none of the members of Local 107, which is Philadelphia-based, is a citizen of New York.

Local 107 has moved to dismiss the amended complaint and IBT, although not a named defendant, has filed a "Statement of Position" opposing the amendment. Following remand, Bender re-filed his salary claim against Local 107 in a separate suit (C.A. 80–0534). Local 107 also has moved to dismiss the 1980 action for lack of diversity jurisdiction. We consider the motions to dismiss both actions in this opinion because of the identity of parties and at least one of the issues.

The parties have conducted extensive discovery related to the citizenship of Local 107's members and to its union membership requirements, and have submitted the fruits of that discovery for our consideration in connection with the pending motions. They have briefed the jurisdictional issues and have argued their positions at a hearing. We also have conducted a number of other proceedings following remand, including a hearing on IBT's motion to hold Bender in contempt for allegedly thwarting implementation of this court's order upholding the merger.

## II. *The Contentions of the Parties*

Local 107 argues that the remand under 28 U.S.C. § 1653 allows Bender to do no more than amend the pleadings to allege the citizenship of both unions named in the 1975 suit. It protests the "unilateral and drastic transformation of this lawsuit" produced by dropping the merger claim and the other parties, after judgment was entered thereon and affirmed by the Court of Appeals. According to Local 107, the Court of Appeals opinion itself demonstrates the narrow scope of permissible amendment under Section 1653. First, it notes that the Court granted Bender's motion to cure defective jurisdictional allegations to avoid dismissal "on purely technical grounds." 614 F.2d at 853. Local 107 reasons that the complaint exceeds the limits of a technical amendment. Second, it theorizes that in light of the statement that remand was necessary because it had no way "of determining whether all the members of the *unions* are non-New York citizens" (emphasis supplied), the Court expected both union defendants to remain in the suit. Finally, Local 107 contends that the narrow compass of the intended amendment is evidenced by the Court's citation to *Berkowitz v. Philadelphia Chewing Gum Corp.*, 303 F.2d 585, 587 (3d Cir. 1962), which remanded a case filed by a minor child and his guardian for amendment of the pleadings to supply the missing citizenship of the child. Both Local 107 and IBT (the latter in its "Statement of Position") further argue that IBT cannot be dropped as a party because it received a judgment on its counterclaim to enforce the merger, which was affirmed by the Court of Appeals. IBT adds that the judgment is still viable, pointing to its pending motion to hold Bender in contempt for failure to comply with the judgment.

Bender's argument that the IBT can be eliminated as a defendant is grounded in significant part on *Field v. Volkswagenwerk A. G.*, 626 F.2d 293 (3d Cir. 1980). In that case the survivor of an automobile accident sued for damages in her own right and also as administratrix of the estate of her husband who died in the accident. Pretrial discovery disclosed that her citizenship and that of the defendant were non-diverse, and the defendant moved to dismiss all claims. In response to the motion, and to create diversity, she sought a voluntary dis-

missal of her individual claim. The trial court denied her motion and dismissed the case. The Court of Appeals reversed, holding that a party who is not indispensable may be dropped to perfect diversity. Bender reasons by analogy that IBT is not indispensable because: (1) the merger claim has been decided and thus is no longer part of the case; and (2) the IBT (and the other plaintiffs) are not necessary parties to the remaining salary claim.[3] In essence, Bender contends that he could have brought the salary claim in 1975 independent of the merger claim and solely against Local 107. He seeks to achieve this result *nunc pro tunc* through amendment of the complaint under Section 1653.

Local 107 argues alternatively that diversity jurisdiction does not exist between Bender and Local 107, even if the other parties could be eliminated, for several reasons. First, Local 107 submits that Bender in effect "destroys his own diversity." According to this argument: (1) Bender became a member of Local 107 on the effective date of the merger in July 1975 (before C.A. 75–2684 was filed); (2) Bender's citizenship must be included in determining the citizenship of Local 107 under the *Bouligny* rule; and (3) a plaintiff (Bender) and a defendant (Local 107 via Bender) are citizens of New York; hence, diversity is lacking. Local 107 further contends that even if Bender's citizenship is not counted, diversity is destroyed by the New York citizenship of two of its retired members who retained, under the union's by-laws, sufficient membership rights to be counted for diversity purposes.

Bender responds that he never exercised the right to become a member of Local 107 either before or after the suit was filed. He reasons that he could not be forced to become a member of the Local involuntarily, and recites the array of actions he instigated to challenge the merger as evidence of his persistent refusal to relinquish his Local 1 membership or to join Local 107. Bender also contests the effort to count the citizenship of retired members of Local 107, asserting that under the contract theory of union rights and duties, which looks to the terms of the union's by-laws *see, e.g., NLRB v. Boeing*, 412 U.S. 67, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973), retirees do not enjoy the rights of active members as defined by the relevant by-laws. He thus objects to consideration of the citizenship of these individuals for the purposes of determining whether diversity exists.

Before we can resolve the conflicting contentions to decide the jurisdictional matter, we must make, on the basis of the parties' submissions, certain critical findings of fact. The parties attempted unsuccessfully to negotiate stipulations of fact with respect to the jurisdictional issues. As agreed to by the parties, we have reviewed the proposed stipulations of each party and, where a dispute exists, have made findings of fact.

### III. *Findings of Fact*

When suit first was instituted on September 23, 1975, Bender was a citizen of New York. Several other individual plaintiffs, who were members of the Executive Board of Local 1, were citizens of Pennsylvania. Because plaintiff Local 1 was an unincorporated association whose citizenship is determined by the citizenship of its members, *United Steelworkers of America v. R. H. Bouligny, Inc., supra*, Local 1 was a citizen of both Pennsylvania and New York.

IBT and Local 107, the defendants named in the 1975 suit, are unincorporated labor organizations. On September 23, 1975, IBT had members in good standing who were citizens of New York and others who were citizens of Pennsylvania. IBT ordered the merger of Local 1 into Local 107 on July 21, 1975. Our opinion after trial on the merits held that the merger order was valid and that at least for the purposes of adjudicating Bender's salary claim, the merger was effective as of that date. 461 F.Supp. at 985. Most active members of Local 107 prior to the July 1975 merger order were citizens of Pennsylvania. Local 107 had no active members who were citizens of New

**3.** Bender correctly notes that IBT was held not liable in our adjudication of the salary claim.

York, although two retired members were New York citizens. *See* discussion *infra* at 10.

On September 9, 1975, Louis J. Bottone, then President of Local 107, notified members of Local 107 that "effective immediately, you are to be considered members of Teamsters Local 107." This letter forwarded a Local 107 membership card and authorization form to be completed and returned to Local 107. Bottone sent a second letter on September 17, 1975 to persons, including Bender, who had not returned the authorization form, advising that "[i]f you fail to respond within thirty (30) days of receipt of this letter, you will relinquish your membership in Teamsters Local 107." The record indicates that at the time suit was filed, Bender had not forwarded a signed authorization card confirming membership in Local 107 and had not tendered any dues. Instead, he had vehemently protested the merger and behaved at all times as though Local 1 continued in existence with its membership intact. In our decision on the salary claim, Bender's continued opposition to the merger led us to conclude that Bender did not serve as an officer or representative of Local 107 and thus was not entitled to salary allegedly owed for services rendered after the merger. By the same reasoning, his activities preclude finding him a member of Local 107.

The evidence further shows that Local 107 did not recognize Bender or the other members of Local 1 as members of Local 107 even after the Bottone letters were sent to these persons. The deposition of Bottone taken in October 1975, two weeks after suit was filed, includes the following colloquy:

"Q. When you sent these letters out, Mr. Bottone, to the former members of Local 1—

A. We don't accept the designation of 'former members of Local 1.' They are still members of Local 1. I don't want my silence to imply acquiescence of the characterization."

Based on the foregoing evidence, we find that at the time the complaint was filed, Local 107 did not consider persons such as Bender to be members nor did Bender take any action to become a member.

As of September 23, 1975, Local 107 had issued honorary withdrawal cards to Harrison Smith and Charles Woll who at that time had retired and moved to New York. When suit was filed by Bender against Local 107 in 1980, Woll had returned to Pennsylvania. However, Frank Farry, another Local 107 member, had retired and moved to New York and had been issued an honorary withdrawal card. Thus, for the purposes of both cases, two persons were citizens of New York and no longer active members of Local 107.

At all relevant times, the Constitution of the IBT, art. XVIII, sec. 4(b) has stated:

A withdrawal card shall be issued to any member of a Local Union who has retired. However, a Local Union may provide in its By-laws that retired members who have been issued withdrawal cards may continue as honorary members with the privilege of attending meetings.

Section 5(d) states:

"Any *ex-member* out on a withdrawal card and desiring to return to membership, must first deposit his withdrawal card with the Local Union by which it was issued; ..." (emphasis supplied).

Section 19(C) of the by-laws of Local 107 states:

(1) A member who has been issued a withdrawal card shall be considered to have voluntarily withdrawn from membership in this Local Union

. . . .

(2) In any case where the Local Union is required to give to a member an honorable [sic] withdrawal card under the terms of the International Constitution and these By-Laws, it may provide for the continuance of Local Union benefits to such member or former member under conditions which it may set forth, but such member or former member shall not be permitted to hold office, or vote, and shall have only such right to participate in the meeting and affairs of the Local Union as shall be permitted by the Local Union Executive Board.

The rights of active members, according to Section 19(F) of the by-laws, include: "(1) the right to nominate candidates or vote in elections or referendums [sic] of the union; [and] (2) the right to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings." As is established by the deposition testimony of the President of Local 107, Mr. Joseph Cimino, retired employees do not pay dues, have no voting rights, and are not required—although they are permitted—to attend meetings.

## IV. *Discussion*

As we have already explained, no diversity exists in the complaint's original form, since both Bender and IBT are citizens of New York.[4] Our first task, then, is to determine whether 28 U.S.C. § 1653 permits Bender to eliminate this obstacle to diversity by dropping the merger claim, and by dropping IBT as a defendant on the salary claim.

■ We begin with the established principle that "jurisdiction is tested by the facts as they existed at the time the action was commenced." *Field v. Volkswagenwerk A.G., supra,* 626 F.2d at 305. Section 1653 permits defects in jurisdictional allegations to be corrected either at the appellate level or upon remand to the trial court as long as the amended pleadings reflect the facts as they existed at the time suit was filed. The amended complaint under consideration here satisfies this threshold requirement of Section 1653 to the extent it is predicated upon the citizenship of the parties as of September 23, 1975.

■ The central question is whether the elimination of the merger claim in its entirety and IBT as a party to the salary claim represents the type of amendment cognized by the Court of Appeals in granting Bender's motion under 28 U.S.C. § 1653. In view of the guidance provided by the Court in its remand opinion, we believe that it did not contemplate the type of amendment attempted here.

First, in granting leave to amend, the Court observed that the complaint alleged only that "[Bender] was a citizen of New York, that IBT had its headquarters in Washington, D. C. and did business in Philadelphia, and that Local 107 had its principal place of business in Philadelphia, Pennsylvania." 614 F.2d at 853. Finding that the *Bouligny* rule of citizenship had not been followed, the Court concluded that "Bender's pleading is therefore defective because it does not plead diversity between Bender and each member of the unions." *Id.* The import of this statement is that permission was granted to amend the complaint to provide proper factual allegations of the citizenship of union members.

The cases cited by the Court as authority for its remand decision further indicates the narrow scope of section 1653. *Berkowitz v. Philadelphia Chewing Gum Co., supra,* exemplifies what seems to us the traditional application of Section 1653. In that case, the citizenship of the minor child on whose behalf a diversity action was brought was not apparent from the face of the pleadings. Dismissal of the action was appealed to the Third Circuit which remanded to the trial court for a determination of diversity. The Court noted the possibility that the child's citizenship was diverse to the defendant at the time the suit was instituted and that "it may be that allegations of pleading which now seem defective and deficient may be amended [under § 1653]." 303 F.2d at 587. We agree with Local 107 that *Berkowitz,* as cited by the Court in its decision to remand the present case, suggests that leave was granted to amend the pleadings under Section 1653 for the limited purpose of allowing Bender to supply the missing facts needed to allege diversity jurisdiction. That opinion does not authorize the sweeping proposition advanced by Bender that the statute allows substantive

**4.** We note also that diversity is not present among other individual plaintiffs, who are Pennsylvania citizens, or plaintiff Local 1, which has Pennsylvania citizenship by virtue of its Pennsylvania members, and defendants Local 107 and IBT, both of whom have Pennsylvania members, hence Pennsylvania citizenship.

restructuring of the litigation by dropping the central claim in the case after judgment and affirmance on appeal.

■ Bender's reliance on *Field v. Volkswagenwerk A.G.* to support his position is unavailing. He cites only the first holding of that opinion which permitted dismissal of a proper but not indispensable party to perfect diversity jurisdiction. This holding is not relevant to the present issue, however, because the dismissal was predicated on the trial court's authority under Fed.R. Civ.P. 21, not on its authority under Section 1653. Bender simultaneously ignores the second holding of *Field* which articulates the boundaries of Section 1653 in terms contrary to the argument he now advances. The second half of *Field* addressed the plaintiff's ability under Section 1653 to substitute an individual with diverse citizenship for the nondiverse administratrix who originally brought suit. · Because the proposed new plaintiff was not named as administratrix until after suit was filed and jurisdiction challenged, the Court refused to allow the substitution under Section 1653, stating:

> [Section] 1653, while designed to permit amendment broadly to avoid dismissal of suits on technical grounds, authorizes federal courts to allow amendment only of defective *allegations* of jurisdiction; it does not provide a remedy for defective jurisdiction itself.

626 F.2d at 306. Section 1653 thus is confined to correct formal, not substantive, defects in jurisdictional allegations.[5] This principle has been articulated in other jurisdictions as well. For example, in *Brennan*

*v. University of Kansas*, 451 F.2d 1287 (10th Cir. 1971), plaintiff sought to add a constitutional claim against the government at the appellate level under Section 1653, to save his complaint from dismissal on the ground of sovereign immunity. The court refused leave to amend, stating: "The power of the appellate court to correct defective jurisdictional allegations concerns defects of form, not substance. An amendment such as contemplated by appellant is not within the purview of the statute." *Id.* at 1289. We interpret the foregoing authorities to preclude Bender's effort to create diversity jurisdiction by a substantive rather than technical correction.

■ We recognize that in *Moore v. Coats Co.*, 270 F.2d 410 (3d Cir. 1959), the second case cited by the Court of Appeals in vacating our judgment, Section 1653 was used to change the form of the litigation to the extent of adding a party. The Court there allowed the plaintiff to establish proper venue by amending the complaint to add a defendant. However, in our view *Moore* falls short of supplying the needed authority for the proposed transformation of this litigation. First, *Moore* involved an amendment before trial to drop a party, and did not address the post-judgment amendment of a claim sought here.[6] Second, this liberal amendment was justified in part because the plaintiff was acting *pro se*. *Id.* at 411. Thus we still find nothing in the remand decision to authorize the substantial reconstitution of the litigation urged here.

■ Even if we adopted a more liberal interpretation of the function and scope of Section 1653, the amended complaint would

---

5. *See also Church of Scientology v. United States*, 499 F.Supp. 1085 (D.Colo.1980).

6. Were we not constrained by the limited scope of Section 1653, *see infra* at 15, or the problem of dropping the merger claim, and were faced only with a request to drop the IBT as a defendant on the salary claim, authority for such dismissal could derive from the line of cases which permits dismissal of a party to a claim even after judgment to perfect diversity jurisdiction, where that party is not indispensable under Fed.R.Civ.P. 19 and where that party will not be prejudiced by such dismissal. *See, e.g., Publicker Industries, Inc. v. Roman Ceramics*

*Corp.*, 603 F.2d 1065 (3d Cir. 1979); *Finn v. American Fire & Casualty Co.*, 207 F.2d 113 (5th Cir. 1953), *cert. denied*, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954); *International Ladies' Garment Workers' Union v. Donnelly Garment*, 121 F.2d 561 (8th Cir. 1941). But such dismissals do not fall within the scope of 28 U.S.C. § 1653 and should not be transposed to the procedural context of a Section 1653 amendment present here. *International Ladies Garment Workers Union v. Donnelly, supra*, 121 F.2d at 563; *Dollar S.S. Lines, Inc. v. Merz*, 68 F.2d 594, 595 (9th Cir. 1934).

run afoul of fundamental procedural principles. Stated simply, an amended complaint at this point in the litigation cannot unilaterally eliminate either a party or a claim. Such result requires dismissal by the court. Fed.R.Civ.P. 41. Although a party can be dismissed after judgment under limited circumstances, *see supra* note 6, we are aware of no authority, nor has Bender suggested any, to allow a *claim* to be dismissed after final judgment has been entered and the judgment has been affirmed at the appellate level. Common sense dictates that such dismissal is impermissible, especially where, as here, the defendants oppose the dismissal and one defendant (IBT) seeks enforcement of the judgment awarded on its counterclaim in the form of a contempt motion against Bender. Granting the relief requested by Bender could result in the emasculation of a viable judgment.

For the foregoing reasons we hold that Bender cannot unilaterally drop the merger claim at this juncture. As a means of fulfilling our obligations in connection with the remand, we will: (1) enter an Order dismissing the amended complaint in C.A. 75–2684; and (2) hereby formally note our conclusion that diversity is not present on Bender's salary claim. The foregoing discussion is sufficient to dispose of the 1975 action. It is necessary, however, that we also consider whether there is, in fact, diversity between Bender and Local 107. Unless we do so we cannot adjudicate the motion to dismiss C.A. 80–0534. Doing so has the added advantage of eliminating the need for another remand if the Court of Appeals disagrees with our conclusions of law in C.A. 75–2684.

■■ We first consider Local 107's argument that Bender destroys his own diversity in the 1975 suit because he was a member of Local 107 whose citizenship must be counted in determining the citizenship of Local 107.[7] Contrary to this contention, our ruling that the merger was valid as of July

21, 1975, is not dispositive of whether Bender became a member of Local 107 prior to the time suit was filed. We adhere to the doctrine that the rights and obligations of a union member are contractual, *NLRB v. Boeing Co.*, 412 U.S. 67, 75–76, 93 S.Ct. 1952, 1957, 36 L.Ed.2d 752 (1973), *NLRB v. Granite State Joint Board*, 409 U.S. 213, 216, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972) and that membership arises when the requirements of the by-laws are satisfied and the union accepts the individual as a member. *Hughes v. Local No. 11*, 287 F.2d 810 (3d Cir.), *cert. denied*, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961).

■ We have preliminarily found as a fact that Bender had not become a member of Local 107 as of September 23, 1975 (or at any time since). We add the following support for this finding. Section 19 of the Local 107 by-laws accords membership when the person has (1) executed a written application for membership on a form provided by the local, (2) tendered the initiation fees and one month's dues, and (3) taken the oath of obligation at a regular meeting. As we have previously noted, Bender never forwarded the authorization card to Local 107 requested by Local 107's president and never tendered any dues. He thus had not satisfied the essential membership requirement of the Local 107 by-laws. Moreover, the president of Local 107 continued to characterize Bender and others as members of Local 1. The citizenship of Bender therefore will not be included in determining the membership of Local 107 as an unincorporated association. Defendant's argument that Bender's membership in Local 107 destroys diversity accordingly must fail.

The status of the retired members of Local 107 who are citizens of New York also must be determined for the purposes of ascertaining whether diversity jurisdiction exists for the 1975 and 1980 suits.[8] Local

---

7. Local 107 does not contend that Bender was a member of Local 107 when he filed the 1980 suit.

8. As indicated earlier, in 1975 and in 1980, most active members of Local 107 were citizens of Pennsylvania and none were citizens of New York. When C.A. 75–2684 was filed, Woll and Smith had been issued honorary withdraw-

107 contends in both its motions to dismiss that diversity is lacking because such persons are recognized as members of Local 107 and thus their citizenship must be considered in determining Local 107's citizenship. We again employ the contract theory of union membership to determine whether retired members share rights and obligations sufficiently comparable to those of active members to justify attributing their citizenship to the local union.

 Despite Mr. Cimino's assertion that Local 107 "recognizes" these persons as members, we find the critical indicia of membership absent. As noted in our findings of fact, the IBT Constitution refers to retired persons who have been issued withdrawal cards as "ex-members," although it simultaneously permits the local to accord honorary status to such persons. The Local 107 by-laws authorize the issuance of honorary withdrawal cards but provide that the right to hold office and to vote on union business is revoked upon retirement, and the obligations to pay dues and attend meetings are eliminated. For all intents and purposes, the rights and obligations of retirees cease upon issuance of a withdrawal card. The label of "honorary" member carries with it only permission (as distinguished from the duty imposed on active members) to attend meetings (a benefit unlikely to be enjoyed where, as here, the person has moved out of state). Under these circumstances, the retired individual is not empowered to affect Local 107's activities and retains only a nominal (and extremely attenuated) relationship with the union. Notwithstanding the denomination of these persons as honorary members, we conclude that their inactive status permits us to disregard their citizenship.

We conclude then that in both 1975 and 1980 Bender and Local 107 were citizens of different states. With respect to C.A. 80–0534, Local 107's motion to dismiss for lack of jurisdiction will therefore be denied.[9]

al cards and were citizens of New York. When C.A. 80-0534 was filed, Woll and Farry had been issued honorary withdrawal cards and were citizens of New York.

This conclusion as to citizenship is not significant, however, with respect to C.A. 75–2684, given our holding that Bender cannot manufacture diversity by dropping the merger claim at this stage of the litigation. We accordingly will enter an order dismissing the amended complaint. Pursuant to the terms of the mandate issued by the Court of Appeals in C.A. 75–2684, we note our finding that diversity is not complete between IBT and Bender, both of whom are citizens of New York, and among several other individual plaintiffs in this case and Local 107 and IBT, all of whom are citizens of Pennsylvania. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

9. It is not disputed that the amount in controversy exceeds $10,000.