**Rodney W. QUINTER**

v.

**VOLKSWAGEN OF AMERICA, Volkswagen of Atlantic, Inc., Volkswagenwerk, A. G., Byron Bloch, Appellant.**

**No. 81–1776.**

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1982.

Decided April 19, 1982.

Henry H. Wallace, Wallace, Chapas & Gravina, Pittsburgh, Pa., for appellant.

Carl A. Eck, John E. Hall (argued) Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellees.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and ACKERMAN,* District Judge.

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This case involves an appeal from a Judgment and Order of the district court finding appellant Byron Bloch in civil contempt for violation of a Protective Order issued by the district court and assessing against Bloch a compensatory fine of $10,000. Bloch challenges the validity of the Protective Order, the applicability of the Order to him, and the district court's finding that he violated the Order.

We conclude that the narrow issue in this case requiring reconsideration by the district court is the fine assessed against Bloch. We remand for the district court to do so in accordance with our findings below.

---

* Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

## I.

This case arises out of a lawsuit brought in 1976 by plaintiff Rodney Quinter against Volkswagen of America and Volkswagenwerk, A.G. (Volkswagen) to recover damages for injuries sustained in a 1974 accident involving a Volkswagen Beetle.[1] Appellant Byron Bloch, an automobile safety design consultant was retained by Quinter and his counsel, Henry H. Wallace, as a consultant and expert witness.

On January 5, 1979, after a three-hour hearing, Judge Maurice B. Cohill, Jr. granted Quinter's Motion for an Order Compelling Production of Documents and Things for Inspection, Copying or Photocopying. At that same hearing the district court also granted Volkswagen's motion for a protective order to cover certain materials Volkswagen considered trade secrets. Bloch was involved in this hearing to the extent that he provided affidavits for Quinter's submission to the district court in opposition to Volkswagen's motion. The district court denied without a hearing Quinter's Motion for Reconsideration of January 18, 1979, and on January 23, 1979, entered the following order:

> AND NOW, to-wit, this 23rd day of January, 1979, after careful consideration of the proposed Protective Order filed by the defendants above-named, pursuant to paragraph 5 of the Order of this Court dated January 5, 1979, said proposed order be and the same hereby is rejected as being unnecessarily burdensome and complex.
>
> In lieu thereof, it is HEREBY ORDERED, ADJUDGED AND DECREED that items obtained by plaintiff or his counsel pursuant to discovery in this case are protected, and neither plaintiff nor his counsel shall themselves copy or permit others to copy said items or otherwise use them for any purpose other than that directly and reasonably related to the above-captioned case.

Order of the Court dated January 23, 1979, at App. 47a.[2]

Pursuant to this Order, Volkswagen turned over to Wallace in March, 1979, a number of documents, including the document at issue in this appeal, a computerized index list of various crash tests and other tests performed by Volkswagen on its automobiles (Index List). During a visit to Pittsburgh in the summer or fall of 1979, Bloch was given the Index List and a copy of the Protective Order by Wallace.

On November 8, 1979, Bloch participated in an ABC television program called "20/20," which dealt with the crashworthiness of Volkswagen Beetles and the susceptibility of persons riding in Beetles involved in rear end collisions to serious injury. During the program Bloch noted that the Index List was the subject of a protective order and held it up before the television cameras for the viewing audience to see. The district court concluded that the viewing audience was probably unable to read the Index List, but that the narrator, Sylvia Chase, and the television cameramen probably were able to read it.

On December 26, 1979, Volkswagen filed a Motion for Sanctions in response to Bloch's appearance on "20/20." Judge Alan Bloch, to whom the case had been assigned in November, 1979, denied Volkswagen's motion on February 28, 1980.[3] Volkswagen then filed a Petition for a Rule to Show Cause for Adjudication of Civil Contempt

---

1. *See Rodney W. Quinter v. Volkswagen of America, Volkswagenwerk, A. G.*, No. 76–941 (W.D.Pa. November 21, 1981), aff'd mem., No. 81–1079 (3d Cir. 1982).

2. In response to the January 5, 1979 Order of the district court, Volkswagen had filed a six-page Protective Order Procedure which Quinter's counsel objected to as "unduly burdensome" and which the district court subsequently rejected. Order of the Court dated January 23, 1979, at App. 47a.

3. Judge Bloch's order stated:

> AND NOW, this 28th day of February, 1980, Rule 37(b)(2) not providing for sanctions for violation of a protective order, defendant's Motion for Sanctions is hereby denied, without prejudice to move for a Rule to Show Cause why plaintiff should not be held in contempt.

App. at 48a.

for the alleged failure of Quinter, his counsel, Wallace, and Bloch to comply with the district court's Protective Order. Volkswagen charged in its petition that Bloch's use of the Index List on "20/20" was unrelated to Quinter's lawsuit against Volkswagen, and was thus a violation of the Protective Order.

On November 19, 1980, two days before the full evidentiary hearing prompted by Volkswagen's petition, it was revealed in Bloch's deposition testimony that Bloch had given the Index List to a lawyer in Florida named Anthony Provitola, who had hired Bloch as a consultant in another case against Volkswagen. At the evidentiary hearing on November 21, 1980 before Judge Cohill, to whom the case had again been assigned, the deposition testimony of Bloch was admitted into evidence and offered as part of Volkswagen's *prima facie* case against Bloch.

The district court concluded that Bloch violated the Protective Order in two ways: one, by using the Index List as a "stage prop" on "20/20," and two, by giving the Index List to Attorney Provitola.[4] Bloch was assessed a $10,000 fine to compensate Volkswagen for losses, by way of costs, expenses and attorneys fees, incurred because of Bloch's violation of the Protective Order.

## II.

A. We need consider only two questions on this appeal: whether the district court's Protective Order was applicable to Bloch and, if so, whether, and to what extent, Bloch violated the Order. Bloch argues that the Protective Order, by its own terms, did not apply to him because he was only an expert witness and was neither the "plaintiff nor his counsel" referred to in the Order. Bloch, however, need not be expressly named in the Protective Order in order to be held liable for civil contempt. *Thompson v. Johnson*, 410 F.Supp. 633, 640 (E.D.Pa.1976), *aff'd mem.*, 556 F.2d 568 (3d Cir. 1977). *See also*, Wright and Miller, *Federal Practice and Procedure* § 2960 at 589 (1973). A person who is not a party to a proceeding may be held in contempt if he or she has actual knowledge of a court's order and either abets the defendant or is legally identified with him. *Thompson v. Johnson* at 640, *quoting Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832, 833 (2nd Cir. 1930).

There is no question that Bloch had actual knowledge of the Protective Order, as he was given a copy of the Protective Order by Quinter's counsel, Wallace. Bloch attempts to escape from under the scope of the Order by arguing that contradictory statements of the district court militate against finding him legally identified with Quinter and Wallace.[5] In his opinion of March 31, 1981, Judge Cohill found that "[t]he plaintiff and his counsel retained Bloch to serve as an expert in the litigation, thus making him their agent. We hold this relationship makes Bloch legally identified with the parties to our protective order." *Quinter v. Volkswagen*, No. 76–941 at 13. Prior to this finding, Judge Cohill had ruled from the bench, in respect to the contempt proceedings against Wallace, that

> I don't think there's a respondeat superior issue here whereby Mr. Wallace is responsible for the actions of Mr. Bloch in the circumstances as related to me and, therefore, we're going to discharge the petition for the rule insofar as Mr. Wallace is concerned.

App. at 157a.

We interpret the district court's statements to mean merely that so far as any unlawful use of the Index List by Bloch,

---

4. During the evidentiary hearing of November 21, 1980, the district court discharged the Rule to Show Cause petition as to Wallace. Transcript of Proceedings of Hearing on Adjudication for Civil Contempt held November 21, 1979, at App. 157a. Quinter was discharged from contempt liability after the hearing. *Quinter v. Volkswagen*, No. 76–941 at 15.

5. Bloch raises several other arguments challenging the validity of the contempt finding and the fine. We find no merit in those assertions except insofar as they are commented on in this opinion.

Wallace would not be held liable on a theory of respondeat superior. Since Wallace put Bloch on notice as to the Protective Order by giving Bloch a copy of the Order, Bloch's subsequent unlawful use of the Index List was outside the scope of his employment as an expert witness for Quinter.

In *Thompson v. Johnson*, 410 F.Supp. 633 (E.D.Pa.1976), the plaintiff, an inmate in a state correctional institution, was seeking a contempt citation against persons who had not been parties to the original consent order. The original consent order provided that the superintendent of the State Correctional Institution at Graterford would insure that incoming "privileged" correspondence addressed to plaintiff would be opened only by plaintiff, though in the presence of his housing unit officer. The terms of the consent order apparently had been violated by, *inter alia*, Charles Batdorf, "the mailroom supervisor." The mailroom supervisor and several of the other persons cited for contempt were not parties to the original consent order. Apparently the defense was raised that since they had not been parties to the original order, they could not be held in contempt. In a thorough and exhaustive analysis of the cases, Judge Luongo noted:

A person is liable for civil contempt if he violates a court order with *actual* notice that the order has been issued. *See United States v. Hall*, 472 F.2d 261 (5th Cir. 1972); *N. L. R. B. v. Crown Laundry and Dry Cleaners, Inc.*, 437 F.2d 290 (5th Cir. 1971); *Universal Athletic Sales Co. v. Salkeld*, 376 F.Supp. 514 (W.D.Pa.1974), vacated, 511 F.2d 904 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Farber v. Rizzo*, 363 F.Supp. 386 (E.D.Pa.1973). It is not necessary that the person be formally served with the order, or that the violation be willful, *Farber v. Rizzo, supra*, or that there be intent to violate the court order. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599, 604 (1949); *Woolfolk v. Brown*, 358 F.Supp. 524, 534 (E.D.Va.1973); *United States v. Ross*, 243 F.Supp. 496 (S.D.N.Y. 1965). In order for a person not a party

to the proceeding to be found in contempt, he must have actual knowledge of the order, and he "must either abet the defendant, or must be legally identified with him." *Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930), *quoted in Backo v. Local 281, Carpenters and Joiners of America*, 438 F.2d 176, 181 (2d Cir. 1970), *cert. denied*, 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971). *See also Wright v. County School Board*, 309 F.Supp. 671, 676–77 (E.D.Va.1970), *rev'd on other grounds sub nom., Wright v. Council of the City of Emporia*, 442 F.2d 570 (4th Cir. 1971), *rev'd*, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972).

\* \* \* \* \* \*

Charles Batdorf, although not a party, meets the identity test of *Alemite Manufacturing Corp., supra*, and is also bound by the Order.

410 F.Supp. 633 at 640.

In this case the argument of Bloch is no different from that proffered by Batlorf in *Thompson*. Neither Bloch nor Batdorf were parties to the Order, but as Judge Luongo appropriately noted, all that is required is that a person "have actual knowledge of the order and ... 'either abet the defendant or ... be legally identified with him.'" Certainly Bloch had knowledge of the Order and was legally identified with Quinter and Wallace as Quinter's expert witness and consultant. If he violated the Order, he is not immune from liability for civil contempt, even though he was not a party on the original decree.

B. It is essential that we evaluate separately each of the two acts for which Bloch was found guilty of contempt. On one issue (involving the "20/20" program) Bloch slipped perilously close to the edge of the precipice which delineates contemptuous from noncontemptuous conduct; on the other issue, (involving Provitola) Bloch stepped off the precipice and toppled over into the ravine of demonstrably clear contemptuous conduct.

The district court made the following major findings as to the "20/20" incident:

It is safe to say that all participants in the "20/20" program, including Mr. Bloch and Mr. Greene, roundly condemned Volkswagen for its *modus operandi* with respect to crash tests and its handling of litigation. During the performance, Mr. Bloch stated that the Index was the subject of our protective order and held the Index for the benefit of viewers so that the television camera showed its pages. Sylvia Chase, the narrator of this segment, was seated next to Mr. Bloch and probably was able to see what was on the Index pages as could the cameramen. To our untrained eyes it did not appear that anyone viewing the show at home would have been able to read what was on the pages of the Index which Mr. Bloch held before the camera.

The district court went on to hold that the use of the Index on the "20/20" program was a violation of the protective order. We likewise believe that the transmission of the Index to Mr. Provitola was a violation of the protective order. Although the incident involving Mr. Provitola was not mentioned in the Petition for the Rule to Show Cause because counsel for Volkswagen did not learn of it until after the Petition was filed, Mr. Bloch knew all of the facts of that situation and did not object to their introduction at the hearing. Even disregarding the Provitola matter, the "20/20" performance was of itself sufficient to constitute contempt.

*Quinter v. Volkswagen*, No. 76–941 at 14–15.

■ We disagree. Although it came within a scintilla of doing so, Volkswagen has not satisfied the "clear and convincing evidence" standard set forth by this circuit in *Fox v. Capital Co.*, 96 F.2d 684, 686 (3d Cir. 1938). *See also, Schauffler v. Local 1291, International Longshoremen's Ass'n*, 292 F.2d 182, 190 (3d Cir. 1961); *Nelson Tool and Machine Co. v. Wonderland Originals, L. T. D.*, 491 F.Supp. 268 (E.D.Pa. 1980). In *Fox v. Capital Co.* it was stated that:

The plaintiff has a heavy burden to show a defendant guilty of civil contempt. It must be done by "clear and convincing evidence," and where there is ground no doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt.

*Fox v. Capitol Co.*, 96 F.2d at 686 (3d Cir. 1938). In view of the district court's finding that "it did not appear that anyone viewing the show at home would have been able to read what was on the pages of the Index," even though the narrator and cameramen "probably" were able to do so, *Quinter v. Volkswagen*, No. 76–941 at 6, we find there is "ground to doubt the wrongfulness" of Bloch's conduct. Arguably Bloch's appearance on "20/20" with the Index List can be termed a "use" of the list solely as a "stage prop." However, because it did not result in the disclosure of the actual contents of the Index List, there is reason to doubt that it was a "clear" and actual *use of the contents* of the Index List in violation of the Protective Order. Absent "clear and convincing" proof that Bloch's appearance violated the Order, he cannot be adjudged in civil contempt.

■ We affirm, however, the district court's holding that in turning over the Index List to Attorney Provitola, Bloch violated the Protective Order. By doing so, Bloch not only disclosed the contents of the Index List, but clearly made use of the Index List in a way proscribed by the Protective Order. The validity of the civil contempt finding which ensued from Bloch's disclosure of the Index List to Provitola is not altered by the fact that Bloch's conduct did not become known until after Volkswagen initiated its Rule to Show Cause petition. Deposition testimony containing this evidence was before the district court at the contempt hearing.

### III.

■ Having determined that Bloch was guilty of only one violation of the district court's Protective Order, we believe that the magnitude of the relief granted merits reconsideration. We recognize that

in civil contempt proceedings enforcement of the rights and remedies of a litigant is the ultimate object. Wright and Miller, *Federal Practice and Procedure* § 2960 at 584. The relief granted in civil contempt proceedings is compensatory or coercive and usually takes the form of a fine in the amount of the damages sustained by petitioner and an award of costs and attorney's fees. *Id.* at 584–585. *See also, Gompers v. Buck's Stove and Range Company*, 221 U.S. 418, 444, 447, 31 S.Ct. 492, 499, 500, 55 L.Ed. 797 (1911); *N. L. R. B. v. Local 825, International Union of Operating Engineers, AFL–CIO*, 430 F.2d 1225, 1227, 1229 (3d Cir. 1970), *cert. denied*, 401 U.S. 976, 91 S.Ct. 1200, 28 L.Ed.2d 326 (1971); *Dow Chemical Company v. Chemical Cleaning, Inc.*, 434 F.2d 1212, 1215 (5th Cir. 1970), *cert. denied*, 402 U.S. 945, 91 S.Ct. 1621, 29 L.Ed.2d 113 (1971). The fine imposed for civil contempt, however, must not exceed the actual damages caused the offended party by a violation of the court's order. *United States v. United Mineworkers*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *National Drying Machinery Co. v. Ackoff*, 245 F.2d 192, 193–94 (3d Cir. 1957); *Thompson v. Johnson*, 410 F.Supp. at 643.

A fine of $10,000, as has been imposed here, is not an insignificant amount. The very substantial fine assessed against appellant Bloch was premised upon the district court's finding that Volkswagen deserved compensation for expenses incurred because of Bloch's dual violation of the district court's Protective Order. However, since we have found that Bloch's appearance on "20/20" with the Index List was not a "clear and convincing" violation of the Protective Order, we are uncertain whether the district court would have, or should have, imposed as substantial a fine as it did, had it assumed and found only one violation of the Order, as we have found, rather than two.

We agree that in giving the Index List to Provitola, Bloch violated the Protective Order. But the fine assessed against Bloch was based in part upon the costs and expenses incurred by Volkswagen as a result of his appearance on "20/20." The district court must decide what costs are chargeable to the only conduct which we deem to be the basis for holding him in civil contempt. Consequently, we will remand to the district court for a determination of the actual loss suffered by Volkswagen because of Bloch's disclosure of the Index List to Provitola and for reconsideration of the appropriate compensatory fine, if any, to be assessed against Bloch.

The judgment of the district court will be vacated.