

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-1995

# Roe v Operation Rescue

Precedential or Non-Precedential:

Docket 94-1123

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Roe v Operation Rescue" (1995). *1995 Decisions.* Paper 102.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/102

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-1123


JANE ROE; MARY MOE;
NATIONAL ABORTION RIGHTS ACTION LEAGUE OF PENNSYLVANIA;
PLANNED PARENTHOOD OF SOUTHEASTERN PENNSYLVANIA;
ELIZABETH BLACKWELL HEALTH CENTER FOR WOMEN;
REPRODUCTIVE HEALTH AND COUNSELING CENTER;
WOMEN'S SUBURBAN CLINIC; ALLENTOWN WOMEN'S CENTER;
NORTHEAST WOMEN'S CENTER; WOMEN'S MEDICAL SERVICES;
ALLEN KLINE, DR.

v.

OPERATION RESCUE; RANDALL TERRY; REVEREND JAMES P. LISANTE;
PRO LIFE NONVIOLENT ACTION PROJECT OF BRONX, N.Y.;
THOMAS HERLIHY; PRO LIFE NONVIOLENT ACTION PROJECT
OF PHILADELPHIA; MICHAEL McMONAGLE; CHESTER COUNTY
CITIZENS CONCERNED ABOUT LIFE; JOHN J. O'BRIEN;
COUNCIL FOR THE SANCTITY OF HUMAN LIFE;
JOSEPH FOREMAN; ADVOCATES FOR LIFE; ANDREW BURNETT;
AMERICAN LIFE LEAGUE; JUDIE BROWN; DIRECT ACTION
COMMITTEE; KATHY HOFFER; CRAIG HOFFER; LIFE AND
FAMILY CENTER; ANDREW SCHULBERG; PRO LIFE ACTION
LEAGUE; JOSEPH SCHEIDLER; PRO LIFE DIRECT ACTION LEAGUE;
JOHN RYAN; OMAHA CHRISTIAN ACTION COUNCIL;
DENNY HARTFORD; PRO LIFE NONVIOLENT ACTION PROJECT OF
WASHINGTON, D.C.; JOHN CAVANAUGH O'KEEFE; JOHN SMITH(S);
AND JANE SMITH(S); the last two being fictitious names,
the real names of said defendants being presently unknown
to plaintiffs, said fictitious names being intended to
designate organizations or persons who are members of
defendant organizations, and others acting in concert with
any of the defendants who are engaging in, or intend to
engage in, the conduct complained of herein

National Abortion Rights Action League of Pennsylvania,
Planned Parenthood of Southeastern Pennsylvania,
Elizabeth Blackwell Health Center for Women,
Reproductive Health and Counseling Center,
Women's Suburban Clinic, Allentown Women's Center
and Northeast Women's Center,


Appellants.

On Appeal from the United States District Court
for the Eastern District of  Pennsylvania
(D.C. Civ. Action No. 88-cv-05157)


Argued:  September 20, 1994

Before: GREENBERG, ROTH and ROSENN, Circuit Judges

(Opinion Filed April 18, 1995)

Susan Frietsche, Esquire (Argued)
Linda J. Wharton, Esquire
Women's Law Project
125 South Ninth Street, Suite 401
Philadelphia, PA 19107
          Attorneys for Appellants

James T. Owens, Esquire (Argued)
Owens, D'Ambrosio & Nescio
25 South Church Street
West Chester, PA 19382
          Attorney for Appellees

OPINION OF THE COURT


ROTH, Circuit Judge:


          This is an action brought for declaratory and injunctive relief to stop blockades of abortion clinics.  Aspects of this dispute have been before the courts for almost seven years.  In the latest episode, the District Court for the Eastern

District of Pennsylvania denied appellants' motion to hold Operation Rescue, Randall A. Terry, Robert Lewis, and Joseph Roach in contempt for violating a Revised Permanent Injunction, issued on July 17, 1989. Plaintiffs, National Abortion Rights Action League of Pennsylvania ("NARAL-PA"), Planned Parenthood Of Southeastern Pennsylvania, Elizabeth Blackwell Health Center for Women, Reproductive Health and Counseling Center, Women's Suburban Clinic, Allentown Women's Center, and Northeast Women's Center appeal that order. Because we find that the district court applied an incorrect legal standard in deciding the question of civil contempt, we will reverse the denial of the motion, and we will remand the case to the district court with instructions to grant the motion.

                              I.

The underlying action was originally brought on June 29, 1988, by eleven plaintiffs, consisting of NARAL-PA, seven abortion and family planning clinics, two pregnant women, and a physician who regularly performed abortions. It was brought in response to Operation Rescue's "publicly announced plans to close down clinics that offer abortions in the Philadelphia area by staging massive demonstrations and blockades at . . . [those] facilities." Roe v. Operation Rescue, 919 F.2d 857, 861 (3d Cir. 1990) ("Roe IV"). The plaintiffs sought declaratory and injunctive relief against these proposed activities. Operation Rescue and Randall Terry were among the named defendants.

After a hearing on June 30, 1988, the United States District Court for the Eastern District of Pennsylvania issued a temporary restraining order ("TRO") "enjoining the defendants and others acting in concert with them from trespassing on, blocking entrances at, or physically abusing or harassing persons working or obtaining services at abortion facilities in the metropolitan Philadelphia area from July 4," 1988, to July 9, 1988. Roe IV at 862.

In March 1989, the district court permanently enjoined the defendants from "trespassing on, blocking, obstructing ingress or egress from any facility at which abortions are performed in the City of Philadelphia or metropolitan area" and from "physically abusing or tortiously harassing persons entering, leaving, working at, or using any services at any facility at which abortions are performed in the City of Philadelphia and metropolitan area." Roe v. Operation Rescue, 710 F. Supp. 577, 589 (E.D. Pa. 1989) ("Roe II"), aff'd in part and rev'd in part in Roe IV. Subsequently, on plaintiffs' motion to modify the permanent injunction to provide for the United States Marshal for the Eastern District of Pennsylvania to read the injunction at protest sites, the district court granted the Revised Permanent Injunction at issue here. Roe v. Operation Rescue, No. 88-5157 (E.D. Pa. July 17, 1989) ("Roe III").

The present appeal arose out of the third civil contempt motion to be filed in this on-going case. On September

7, 1993, plaintiffs sought civil contempt sanctions against Operation Rescue, Randall Terry, and non-party respondents Joseph Roach, Robert Lewis, and Owenna Nagy for alleged violations on July 9, 1993, of the district court's Revised Permanent Injunction. On December 1, 1993, the district court conducted a hearing on the motion.

At the hearing, the plaintiffs presented evidence that during the summer of 1993 Operation Rescue National organized, publicized, and raised money for a nationwide campaign to protest abortion rights in seven cities, designated "Cities of Refuge."[1] The campaign was to take place from July 8 through 18, 1993. Philadelphia was named as one of the "Cities of Refuge." Evidence established that Operation Rescue National, Randall Terry, and the Executive Director of Operation Rescue National, Keith Tucci, advertised and promoted the campaign in anti-abortion magazines.

The plaintiffs introduced into evidence a letter sent out over Randall Terry's name on stationery identifying Terry as "Founder, Operation Rescue." Terry acknowledged writing the letter. The letter asked supporters to contribute money and to participate personally "to help Operation Rescue National put on the Cities of Refuge." Appendix ("App.") at 183, 262-63.

---

1    As discussed below, we hold that the two groups, Operation Rescue and Operation Rescue National, are interchangeable.

The plaintiffs also submitted promotional literature, describing the Cities of Refuge campaign. These materials listed planned activities, including "rescues," which have been characterized in defendants' literature as "passive, non-violent direct action." See, e.g., App. at 265. Promotional fliers also listed local speakers who would address the participants in the Cities of Refuge Campaign at the Valley Forge Hilton on seven evenings during the campaign. Randall Terry, Keith Tucci, and Robert Lewis were among those listed as speakers. Terry's speech was scheduled for July 9. App. at 258-59, 261.

Testimony at the December 1 hearing established that from July 9th through the 18th several blockades and numerous anti-abortion demonstrations and protests occurred in the Philadelphia area. On the morning of July 9th, over 100 anti-abortion protestors assembled on the grounds of the Crozer-Chester Medical Center, in front of the Reproductive Health and Counseling Center ("RHCC"). The demonstrators, many of whom wore "Operation Rescue"/"Cities of Refuge" badges and "Rescue" arm bands, effectively blocked the clinic's three doors from approximately 10:30 a.m. until 3:30-3:45 p.m.

Witnesses testified that appellees Joseph Roach and Robert Lewis directed the protesters, moving those needing rest into the shade and interacting with the police. There was, however, no evidence that Roach or Lewis physically blocked a door. At about 12:45 p.m., a United States Marshal read the

Revised Permanent Injunction over a bull horn to the protestors. Witnesses stated that Roach and Lewis, who conceded that they had actual knowledge of the injunction at the time of the blockade, did nothing to disperse the blockade after the injunction was read.

An individual who attended the Cities of Refuge events at the Valley Forge Hilton on July 14, 1993, testified that appellee Lewis acted as Master of Ceremonies and introduced Keith Tucci as the Operation Rescue National leader. Tucci in turn thanked individuals including "Bob" and "Joe," presumably referring to Robert Lewis and Joseph Roach, for their local leadership. The witness testified that Roach and Lewis wore red arm bands, designating their marshal status, and that at the close of the evening they directed the group where "to meet for tomorrow's events."

After the hearing, the district court denied plaintiffs' motion. Finding that Roach and Lewis had actual knowledge of the court's order and "were present and active at certain events occurring from July 8, 1993, through July 18, 1993," the district court nonetheless held that the plaintiffs failed to establish that either Roach or Lewis violated the Revised Permanent Injunction. Roe v. Operation Rescue, No. 88-5157, slip op. at 1 (E.D. Pa. Dec. 10, 1993) ("Roe V"). The court concluded that "Roach and Lewis wore red arm bands, but it was not established by clear and convincing evidence that the

bands were associated with one particular group, namely Operation Rescue."  Id.  In addition, the district judge erroneously referred to Terry's speech at the Valley Forge Hilton on the evening of July 9th as being on a "date prior to the 'Cities of Refuge' campaign."  He then found that the plaintiffs had failed to establish that Terry's activities violated the Revised Permanent Injunction.  Id. at 2.

Appellants filed this appeal of the denial of their contempt motion, designating Operation Rescue, Terry, Lewis, and Roach as appellees.

## II.

Our review of the denial of a contempt motion is for abuse of discretion by the district court.  Reversal is appropriate "only where the denial is based on an error of law or a finding of fact that is clearly erroneous."  Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 145 (3d Cir. 1994); see also Martin v. International Matex Tank Terminals-Bayonne, 928 F.2d 614, 626 (3d Cir. 1991); Littlejohn v. Bic Corp., 851 F.2d 673, 683 (3d Cir. 1988).

## III.

We conclude that the district court erred as a matter of law by ignoring the vast documentary evidence and undisputed testimony demonstrating that Operation Rescue, Randall Terry, Robert Lewis, and Joseph Roach acted in concert to violate the

Revised Permanent Injunction by orchestrating the July 9th blockade of the RHCC.

A. *Operation Rescue*

A plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." Roe II at 657. Although the district court made no specific findings regarding Operation Rescue's role in the July 9th RHCC blockade, the court's conclusion that "it was not established by clear and convincing evidence that the red arm bands [that Roach and Lewis had worn] were associated with Terry or Operation Rescue," Roe V at 2, suggests that the court implicitly concluded that Operation Rescue had no involvement in the July 9th blockade and therefore did not disobey the order.

We conclude that the trial court abused its discretion by holding that evidence demonstrating an association between the red arm bands and Operation Rescue was necessary to establish Operation Rescue's involvement in the RHCC blockade. Such a test has no basis in the language of the Revised Permanent Injunction. By focusing on the arm bands, the court appears to have ignored the vast documentary evidence that plaintiffs presented at the hearing, linking Operation Rescue to the blockade.

Included in the documentary evidence establishing the connection between Operation Rescue, Operation Rescue National, and the RHCC campaign are the literature, fundraising letters, and organizing materials put out by Operation Rescue, Operation Rescue National, Randall Terry, and Keith Tucci to promote the Cities of Refuge Campaign. These include the materials publicizing and raising funds for the Cities of Refuge campaign, some of which urged "non-violent direct action" in the Philadelphia area during the period from July 8-17, 1993. App. at 258, 260-61, 262-74. On April 4, 1993, Keith Tucci, in his capacity as Executive Director of Operation Rescue National, sent out a letter on Operation Rescue letterhead to promote the Cities of Refuge "life-saving activities" and to solicit funds for these events. App. at 267-68. Operation Rescue and Operation Rescue National materials published after the Cities of Refuge campaign claimed credit for its success. App. at 275-84. A publication, entitled "The Rescuer," expressly identified the July 9th blockade of RHCC as part of the Cities of Refuge Campaign. App. at 285-88.

We find the Appellees' argument that Operation Rescue National is a separate and distinct organization from Operation Rescue to be disingenuous.[2] Indeed, the record supports the

_____

[2] At least two other federal courts have found Operation Rescue National and Operation Rescue to be the same organization. See NOW v. Operation Rescue, 816 F. Supp. 729, 733 (D.D.C. 1993); Women's Health Care Servs., P.A. v. Operation Rescue-National, 1991 U.S. Dist. LEXIS 14521, *1-4 (D. Kan. Aug. 27, 1991);

conclusion that there is a similarity of membership and an interchangeable use of names between the two groups. Even if the record does not establish that Operation Rescue and Operation Rescue National are identical, it indicates that Operation Rescue National and Operation Rescue acted in concert to conduct the Cities of Refuge Campaign.

The Appellees often failed to distinguish between Operation Rescue National and Operation Rescue in their own promotional literature. For example, when Randall Terry sent out a letter soliciting support for the Cities of Refuge Campaign on stationary identifying him as "Founder, Operation Rescue," he sought donations for "Operation Rescue National" but stated: "The child-killers fear Operation Rescue more than any other pro-life group. Your gifts help Operation Rescue National keep the abortion industry on the run." App. at 262-63 (emphasis added). Similarly, Keith Tucci sent his April 4 Cities of Refuge fundraising letter on Operation Rescue stationery, referred to Operation Rescue in the body of the letter, but signed it as Executive Director of Operation Rescue National. App. at 267-68.

Testimony at the hearing also linked Operation Rescue National to Operation Rescue and to the July 9th RHCC blockade.[3] Many of the blockaders at RHCC wore "Cities of Refuge" badges and "Rescue" arm bands. App. at 38, 116. An attendee at the Valley

---

[3] See App. at 71 (testimony that a check written and mailed to Operation Rescue was cashed and endorsed by "ORN," presumably Operation Rescue National).

Forge Hilton rally testified that those present wore similar emblems, as well as t-shirts and hats with the same "Cities of Refuge" logo as that on the Operation Rescue/Cities of Refuge promotional mailings. App. at 166-67.

In light of the overwhelming record evidence of Operation Rescue involvement, we believe that the trial court abused its discretion by basing its decision solely on its finding that the red arm bands were not proven by clear and convincing evidence to be associated with Operation Rescue and thereby concluding that Operation Rescue was not implicated in the July 9th blockade.

B. *Randall Terry*

Appellants argue that the district court committed serious errors of law and fact in finding that Terry was not involved in activities related to the July 9, 1993, RHCC blockade in violation of the Revised Permanent Injunction. They contend that the trial court abused its discretion by relying on the erroneous legal conclusion that a contemnor must be physically present at the scene to violate the injunction. We agree that the trial court erred as a matter of law by ignoring undisputed testimony that Terry solicited support for the Cities of Refuge campaign and spoke at one of the Cities of Refuge events, thereby acting in concert with Operation Rescue to orchestrate the July 9th blockade.[4] See App. at 183-84 (Terry's testimony).

_____

[4] Appellants also assert that the court committed a serious factual error in setting the date of Terry's speaking

The district court concluded that the plaintiffs failed to establish that Terry violated the order:

> Plaintiffs failed to establish that defendant Terry was present or active in any of the events in question. . . . Terry did speak at the Valley Forge Hilton Hotel at a date prior to the "Cities of Refuge" campaign. However, the Hotel is in excess of twenty miles from the Reproductive Health and Counseling Center and the speech concerned the political involvement of those in the pro-life movement. Said activities were not in violation of this court's Order.

Roe V at 2.

We have previously held that an instigator of contemptuous conduct may not "absolve himself of contempt liability by leaving the physical performance of the forbidden conduct to others." Roe IV at 871. In upholding the district court's finding that defendant Michael McMonagle violated the TRO in a 1989 blockade, this court found that actual trespass was not "a necessary precondition for holding McMonagle in civil contempt" where he had instructed protestors during the blockade and spoken with police officials at the scene. Id. When a party

_____

appearance at "a date prior" to the Cities of Refuge campaign when all the evidence, including Terry's own testimony, indicates that the speech occurred during the campaign, in the evening of the same day as the RHCC blockade. Appellees argue that the error was harmless and that placing Terry's speech on a date "prior to" the campaign actually supported appellants' argument. A clearly erroneous factual finding may create appropriate grounds for reversal of a trial court's decision in a contempt proceeding. See Harley-Davidson v. Morris, 19 F.3d at 145; Martin v. International Matex Tank Terminals, 928 F.2d at 626. We do not find it necessary to reach this issue, however, because we find sufficient other legal and factual grounds to support our reversal.

to the Revised Permanent Injunction urges others to participate in conduct violative of the Injunction, such encouragement may itself suffice to support a finding of contempt.[5]

Although Terry was not physically present at the July 9th RHCC blockade, uncontroverted evidence establishes Terry's involvement in at least two activities related to the blockade in violation of the Revised Permanent Injunction. First, prior to the blockade, Terry wrote the letter discussed above to encourage financial support for and participation in the Cities of Refuge campaign. The letter explicitly stated that "[w]ith God's help," rescues would occur as part of the "massive pro-life counter-offensive." App. at 262. Terry's subsequent testimony indicates his equation of "rescues" with "blockades."[6] The letter urged:

_____

[5]    See New York State NOW v. Terry, 732 F. Supp. 388, 405 (S.D.N.Y. 1990) (holding a local group affiliated with Operation Rescue in contempt of injunctive orders that prohibited blocking access to medical facilities that performed abortions where six organizational leaders signed a letter urging the group's members to participate in a "National Day of Rescue"), aff'd in part, rev'd in part on other grounds, 961 F.2d 390 (2d Cir. 1992).

[6]    The testimony includes the following dialogue, in which Roach questioned Terry:

> A  [Terry]  When you say rescue, define that.  Do you mean blockade?
>
> Q  To blockade . . .
>
> A  Okay.
>
> Q  . . . doors.

See also Roe IV at 861 (3d Cir. 1990) (defining "rescue missions" as anti-abortion "blockades and demonstrations").

**With God's help, the Cities of refuge will have a much larger impact than even Wichita** [presumably referring to blockades of clinics in Wichita, Kansas]; more children and mothers will be rescued, more pro-lifers will be in the street, more abortionists will be exposed and confronted, and more fresh troops will be brought in to the battle.

App. at 262.

Terry's reference to Wichita, his use of the word "rescue," and his battle imagery all suggest that he was encouraging the activity that ultimately occurred at the RHCC. By helping to organize, publicize, and raise money for the Cities of Refuge campaign that, as discussed above, instigated the July 9th blockade of the RHCC, Terry acted in contempt of the Revised Permanent Injunction.

Second, Terry was a featured speaker at a nationally-publicized rally in the Philadelphia area on the night of the blockade. His speech was advertised extensively in Cities of Refuge promotional materials that promoted "rescue" activities in the Philadelphia area. App. at 258-59, 261. Testimony revealed that his presence was meant to attract people to the Philadelphia area events, thus facilitating the July 9th blockade. See App. at 258, 260-61.

Given these facts, the trial court's conclusion that "[p]laintiffs failed to establish that defendant Terry was present or active in any of the events in question" suggests that the court relied on the erroneous legal conclusion that a contemnor must participate on the scene in order to violate the

Revised Permanent Injunction. The court's emphasis on the physical distance between Terry at the time he gave his speech and the site of the blockade buttresses this conclusion. We reverse the trial court's decision because it is based on a clear error of law. See, e.g., Harley-Davidson, Inc. v. Morris, 19 F.3d at 145 (holding that questions of law in a contempt proceeding are subject to plenary review).

C. *Roach and Lewis*

The district court refused to hold Roach and Lewis in contempt on the grounds that the plaintiffs failed to prove that the two men violated the Revised Permanent Injunction. In particular, the court noted the plaintiffs' failure to establish by clear and convincing evidence that the red arm bands that Roach and Lewis wore "were associated with one particular group, namely Operation Rescue." Roe V at 1. The trial court erred by concluding that Roach and Lewis did not violate the Revised Permanent Injunction even though appellants had shown by clear and convincing evidence that Roach and Lewis acted in concert with Operation Rescue and Terry to violate its terms.

Case law establishes, and the trial court acknowledged, that individuals, who are neither parties to a proceeding nor named in the court order at issue, may nonetheless be subject to the court's contempt powers if they have "knowledge of a valid court order and abet others in violating it." Roe IV at 857; Quinter v. Volkswagen of America, 676 F.2d 969, 972 (3d Cir.

1982); Roe V at 1.  Moreover, the Revised Permanent Injunction, by its terms, prohibits non-parties with actual knowledge of the Injunction from "acting in concert" with the named parties to frustrate the injunction or avoid compliance with it.  Id. at 2.

The district court found that Roach and Lewis had knowledge of the Revised Permanent Injunction.  Id.  Roach and Lewis have not challenged that finding.  There is, moreover, clear and convincing evidence in the record to show that Roach and Lewis acted in concert with Operation Rescue and Randall Terry to violate the Revised Permanent Injunction by organizing the Cities of Refuge campaign in the Philadelphia area in general and by leading the July 9th blockade of RHCC in particular.  Undisputed testimony established that Roach and Lewis attended the RHCC blockade.  While there, they wore red arm bands and acted in a leadership capacity, whether or not they physically blocked entrances to the building.[7]  Roach and Lewis admitted to playing local leadership roles in the Cities of Refuge campaign.  App. at 299, 234-35.  Undisputed testimony established that Lewis acted as Master of Ceremonies on the July 14th rally at the Valley Forge Hilton, where he presented Keith Tucci, director of Operation Rescue National, who in turn recognized Lewis's "local leadership."  App. at 169-70.  Moreover, Lewis's name appeared

---

[7]    As discussed above, a contemnor need not have actually physically trespassed or blockaded a door to be held in contempt of the Revised Permanent Injunction.

with Terry's on Cities of Refuge fliers and promotional materials.

Appellee Roach received an award at the July 14th rally for leadership and also received a commendation from Keith Tucci. Roach testified, moreover, that it was he who invited Terry to speak at the Valley Forge Hilton on the night of the blockade in order to draw a crowd. App. at 234-35.

The trial court thus appears to have misread the Revised Permanent Injunction's "acting in concert" clause by failing to hold these two non-parties in contempt where undisputed evidence established their coordinated activities with Operation Rescue and Terry to organize and run the July 9th blockade. The court erred by focusing exclusively on the association between the arm bands and Operation Rescue or Terry.

IV.

For the reasons stated above, we will reverse the judgment of the district court and remand this case to the district court with instructions to enter an order granting plaintiffs' motion to hold Operation Rescue, Randall Terry, Robert Lewis, and Joseph Roach in civil contempt of the Permanent

Revised Injunction, issued July 17, 1989, and for further proceedings consistent with this opinion.