**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1759
_____

LAWN DOCTOR, INC.,
a New Jersey Corporation

v.

JOSEPH RIZZO;
ANNAMARIA RIZZO,

                                   Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-12-cv-01430)
Magistrate Judge:  Honorable Tonianne J. Bongiovanni

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 11, 2016
Before:  JORDAN, BARRY and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 13, 2016)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellee Lawn Doctor, Inc., a franchisor of businesses engaging in commercial and residential lawn care and related services, filed a complaint against appellants Joseph and Annamaria Rizzo, former franchisees, alleging that they failed to abide by a restrictive covenant not to compete against Lawn Doctor for 18 months after the effective date of their franchise's termination. The parties entered into a settlement agreement, which modified the restrictive covenant. After a hearing before the Magistrate Judge[1] on whether the Rizzos' "irrigation services" business fell within the definition of "Competitive Business" as that term was used in the modified covenant, a declaratory judgment enforcing the settlement agreement was entered in favor of Lawn Doctor. The terms of the settlement agreement were then memorialized in a consent injunction entered on January 25, 2013; the Court retained jurisdiction over its enforcement.

In August 2013, Lawn Doctor sought relief from the District Court, arguing that the Rizzos were violating the consent injunction by operating a competing lawn care business, Advanced Enviro Care, Inc. (AEC). In defense, the Rizzos argued that they had sold AEC to a third party, Daniel Wilkerson, in an arm's length transaction. After a hearing, the Court determined that the Rizzos had violated the consent injunction by, inter alia, transferring ownership of AEC to Wilkerson while acting as his lender. In a letter-order entered November 4, 2013, the Court ordered the new business to cease using any Lawn Doctor logos or phone numbers; it declined to address any monetary remedy,

---

[1] The parties consented to have their case adjudicated by a magistrate judge. See 28

stating that Lawn Doctor could address sanctions or other costs in future filings. The

Court also awarded Lawn Doctor attorneys' fees for the costs incurred in bringing the

contempt action; that order directed Lawn Doctor to provide a fee chart, which it did in

late November. Lawn Doctor subsequently filed a motion for sanctions. In a letter-order

entered on March 14, 2014, the Court found that the Rizzos were in contempt, and

awarded $178,000 in sanctions; the order did not address the amount of attorneys' fees.[2]

On March 28, 2014, the Rizzos filed a notice of appeal. The Court entered a final

amended order on August 5, 2014, which included attorneys' fees, for a total award of

$201,790.18. No further appeal was taken.

On appeal, the Rizzos argue that the Court erred in determining that they had

violated the non-compete clause and that the civil contempt award was arbitrary. They

further challenge the award of attorneys' fees and costs.

We must first address our jurisdiction. Specifically, we must determine whether

the Court's failure to specify the amount of the attorneys' fees in the March 14, 2014

order precludes us from exercising jurisdiction over this appeal. Generally speaking,

appellate courts may exercise jurisdiction only over final decisions of the district courts.

---

U.S.C. § 636(c)(1).

[2] On January 9, 2015, we remanded the matter to the District Court for the sole purpose of allowing it to rule on Lawn Doctor's motion to correct the March 14 judgment pursuant to Fed. R. Civ. P. 60(a). The District Court granted the motion, amending its judgment to include an award of $23,790.18 for attorneys' fees and costs. As we make clear in the text, the Rizzos did not file a new or amended notice of appeal after that order.

See 28 U.S.C. § 1291.  "[A] 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs, 134 S. Ct. 773, 779 (2014).  In Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202 (1988), the Supreme Court adopted a uniform rule that an order is final for purposes of § 1291 despite the unresolved issue of attorneys' fees.  The Court observed that, in general, "a claim for attorney's fees is not part of the merits of the action to which the fees pertain."  Id.  The Court acknowledged, however, that "[i]f one were to regard the demand for attorney's fees as itself part of the merits, the . . . merits would then not have been concluded, and § 1291 finality would not exist."  Id. at 200 (emphasis in original).  Indeed, we have since held that the rule of Budinich does not apply where attorneys' fees are sought as part of damages, rather than as the prevailing party.  See Vargas v. Hudson Cty. Bd. of Elections, 949 F.2d 665, 670 (3d Cir. 1991); see also Buchanan v. Stanships, Inc., 485 U.S. 265, 268 (1988) (noting that the general rule that a claim of attorneys' fees is not part of the underlying action may not apply "if expenses of this sort were provided as an aspect of the underlying action.").

Our decision in Vargas in instructive in this case.  Damages are available in civil contempt proceedings "to compensate for losses sustained by the [contemnor's] disobedience."  Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994).  It is well established that attorneys' fees are authorized as an *element* of damages that could be

4

asserted against the contemnor.  See Toledo Scale Col. v. Computing Scale Co., 261 U.S. 399, 428 (1922); Robin Woods, 28 F.3d at 400 ("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party") (quoting Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272 (5th Cir.1977)); accord In re Gen. Motors, 61 F.3d 256, 259 (4th Cir. 1995); Donovan v. Burlington N., Inc., 781 F.2d 680, (9th Cir. 1986).  As we have noted, "[o]nly with an award of attorneys' fees can [the injured party] be restored to the position it would have occupied had [the contemnor] complied with the [court order in question]." Robin Woods, 28 F.3d at 400; see also Quinter v. Volkswagen of Am., 676 F.2d 969, 975 (3d Cir. 1982) (noting the relief granted in civil contempt proceedings "usually takes the form of a fine in the amount of the damages sustained by petitioner and an award of costs and attorney's fees").

Lawn Doctor requested attorneys' fees and costs "as a result of [the Rizzo's] contemptuous conduct" and as an "appropriate remedy for contempt."  The Court's award of attorneys' fees was to remedy the underlying injury, not to compensate Lawn Doctor as the prevailing party.  See Budinich, 486 U.S. at 200 (noting that a factor to consider in determining whether attorneys' fees are part of the merits is whether "such an award [is a] remedy [for] the injury giving rise to the action.").  Because calculation of the fees is determinative of the Rizzos' ultimate liability, we conclude that the award was part of the underlying judgment, not collateral to it.  Under these circumstances, the March 14, 2014 order did not become final until the amount of fees was fixed.  See

Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 742–44 (1976) (an order that determines the issue of liability but leaves unresolved the assessment of damages is not final within the meaning of § 1291).

Although the Rizzos' notice of appeal was premature, it ripened when the Court amended its order to include the amount of attorneys' fees. See Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184–85 (3d Cir.1983) (holding that a Court of Appeals may decide a premature appeal from a non-final order if an order which is final is entered before an adjudication on the merits); see also Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 506 (3d Cir. 1995) (applying the principle of Cape May Greene to entertain an appeal which was prematurely filed from an order awarding attorneys' fees but which became final upon a subsequent order fixing the fee amount).[3] We therefore exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. See Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 145 (3d Cir. 1994) (noting that an order adjudicating a motion for contempt stemming from a consent injunction is final and appealable). We review for abuse of discretion the decision to grant a motion for contempt, see Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995), and the award of sanctions concomitant thereto. Robin Woods, 28 F.3d at 399. We find an abuse of discretion where the "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application

---

[3] Because the Rizzos failed to file a notice of appeal from the Court's amended final order, we lack jurisdiction to review the order specifying the amount of attorneys' fees.

6

of law to fact." Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 147 (3d Cir. 2008) (citation omitted).

Ample evidence supports the Court's finding that the Rizzos violated the consent injunction. See Robin Woods, 28 F.3d at 399 (contempt must be proved by clear and convincing evidence).[4] The Rizzos acted as a competitive lender when they transferred ownership of AEC to Wilkerson in exchange for a promissory note of $275,000 (the "Wilkerson deal"). Indeed, in their brief on appeal, the Rizzos admit that they "provided financing to AEC via a Stock Purchase Agreement in the sum of $275,000 which was payable in July 2014." Appellant's Br. at 10. The consent injunction specifically prohibited them from doing this. LD App. at 106a, ¶ (f). Their protestations that they acted in good faith are of no avail. F.T.C. v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010) ("good faith is not a defense to civil contempt.").

We also agree with Lawn Doctor that the Rizzos are foreclosed from arguing that they did not violate the consent injunction because AEC solely provided irrigation services, which the Rizzos maintain were not part of the non-compete covenant. After the settlement, the parties agreed to have the Court determine whether irrigation services were part of the modified covenant. The Court determined that they were, and declared that the Rizzos were in violation of the settlement agreement by operating an irrigation

---

[4] "To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003)

7

services business. Pursuant to the declaratory judgment, the Consent Injunction was revised to explicitly include irrigation services within the definition of "Competitive Business." The Rizzos did not appeal from the declaratory judgment. See 28 U.S.C. § 2201 (a declaratory judgment "shall have the force and effect of a final judgment or decree and shall be reviewable as such"). Because they did not seek to have the consent injunction set aside or amended, they waived any objection to it. See Drywall Tapers and Pointers of Greater N.Y. v. Nastasi & Assoc., 488 F.3d 88, 92 (2d Cir. 2007) ("An appeal from a consent injunction is 'generally unavailable' since the parties are held to have waived any objection to issues included in the injunction."); see generally U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers, 601 F.2d 1269, 1274 (3d Cir. 1979) ("[W]hile consent decrees are judicial acts, they have many of the attributes of contracts voluntarily undertaken.").[5]

The Rizzos also challenge the Court's award of civil contempt damages. "Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" Robin Woods, 28 F.3d at 400 (citation omitted). A compensatory award

_____

(citation omitted).

[5] Because their actions in acting as a competitive lender are sufficient to support the finding of contempt, we need not address the Rizzos' argument that they did not assign Lawn Doctor's phone number to Wilkerson. We note, too, that their evidence in support of this argument was not part of the record below. See Webb v. City of Philadelphia, 562 F.3d 256, 261 n.4 (3d Cir. 2009) (courts of appeals do "not consider material [   ] that is outside of the district court record.")

seeks "to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." Id. (citation omitted). A district court has "wide, but not unlimited, discretion in fashioning appropriate compensatory sanctions." Id. at 401.

Lawn Doctor argued that it was entitled, as a sanction, to lost profits in the form of (1) the fair market value of its customer service list which it valued at $178,156.45;[6] (2) the $275,000 value ascribed to it by the "willing buyer," Wilkerson; or (3) the profits generated by the operation of the business during the violation period, which it calculated based on historical numbers to be $90,960. See F.T.C. v. Trudeau, 579 F.3d 754, 771 (7th Cir. 2009) ("defendant's profits can be a proper measure for sanctions" in contempt proceedings). Lawn Doctor also argued that the award should include the royalties it would have received during the violation period, multiplied by a factor of 1.5 due to the "flagrant violation" of the Court's order, for a total of $50,106.48.

At the contempt hearing, the Court made it clear that it was considering sanctions, and it advised the Rizzos that they could take actions which would affect the type and amount of sanctions it would impose. Specifically, the Rizzos were directed to remove Lawn Doctor's logo from AEC's trucks, ensure that all of Lawn Doctor's phone numbers were assigned back to it, and "undo" the Wilkerson deal. Although Lawn Doctor had

---

[6] In support of this argument, the Chairman and CEO of Lawn Doctor certified that because "the Rizzos have transferred the customer list . . . [it] is no longer confidential to Lawn Doctor, and the value in its confidentiality is lost." Appellee's App. at 131a ¶12.

alleged that its customer lists were part of the business assets transferred by the Rizzos to Wilkerson, the Court remained unconvinced that it had, as of yet, provided sufficient proof to support this claim. The Court advised the Rizzos:

> Well, whatever you sold to [Wilkerson] and I don't know what you sold to him, you have to unsell to him. And you're obviously getting a big chunk of change from him in less than a year. And I don't know what that entails. So if you want to tell me all you sold were the vans and the – the van and the truck and you're getting back and you didn't give him a customer list that is theirs, I don't know.

Appellant's App., Vol. II at 65a-66a. The Court also discussed the possibility that the promissory note could be turned over to Lawn Doctor.

In imposing sanctions several weeks later, the Court noted that the Rizzos failed to "heed the Court's cautionary warnings." The Rizzos maintained that they "gave Mr. Wilkerson the [promissory] note to keep forever." But instead of "undoing" the Wilkerson deal, or assigning the promissory note to Lawn Doctor, the Rizzos had actually assigned the promissory note back to AEC.[7] Nor, the Court concluded, despite "the opportunity," did the Rizzos take any steps to "assuage [Lawn Doctor's] or the Court's concern that what was sold to Wilkerson for $275,000 was anything other than Lawn Doctor's customer list or other Lawn Doctor property or proprietary information."

---

[7] As Lawn Doctor described it, the Rizzos "assigned the note secured by the assets of [AEC], back to AEC. And this transaction was approved by Wilkerson on behalf of [AEC]. Thus, Wilkerson has now agreed to pay [AEC] the money owed for buying [AEC] and if Wilkerson fails to pay [AEC] the money it owes [AEC] for buying [AEC], then [AEC's] only remedy is itself."

10

The Court went on to find that, "as a result, the Court can reach no other conclusion that what was wrongfully transferred included the value of Lawn Doctor's customer list." It then determined that the appropriate sanction was the fair market value of the customer service list, $178,156.45.

The burden in a civil contempt proceeding is on the petitioning party. Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990). Here, we conclude, the Court erred in shifting the burden onto the Rizzos to prove that the customer service list had *not* been transferred as part of the Wilkerson Deal. It then abused its discretion in basing its sanctions award on the value of the customer list which it assumed, in the *absence* of evidence to the contrary, had been transferred to a third party.[8] See Quinter, 676 F.2d at 975 (contempt damages "must not exceed the actual damages caused the offended party by a violation of the court's order."). We will therefore vacate the Court's award of sanctions and remand for consideration of compensatory damages consistent with the evidence in the record.

Finally, the Rizzos challenge the Court's award of attorneys' fees and costs. In light of the foregoing, we are persuaded that the Rizzos willfully disregarded the injunction and that the Court's decision to award attorneys' fees as compensation for

---

[8] The basis of the Court's award is particularly troubling in light of Lawn Doctor's statement in its appellate brief that "it became self-evident that Rizzo did not actually sell this business to Wilkerson . . ." but rather the deal was a scheme to provide cover for the fact that the Rizzos "would continue to service Lawn Doctor's former customers." Appellee's Br. at 17. If the business was not sold, then Lawn Doctor's customer list was

their contempt was not an abuse of discretion. As noted *supra*, because the Rizzos failed to file a second or amended notice of appeal, we lack jurisdiction to consider the *amount* of attorneys' fees awarded. Accordingly, we will affirm the District Court's order to the extent it found Appellants in contempt and awarded attorneys' fees and costs, vacate it to the extent it imposed $178,156.45 in sanctions, and remand the matter for further proceedings consistent with this opinion.

not transferred to Wilkerson and its value could not serve as the basis for damages.