LOCAL NO. 1 (ACA), BROADCAST EMPLOYEES OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, William Bender, Morton Borrow, Walter Jost, and Anthony Evasew, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Frank E. Fitzsimmons, General President, Edward Nangle, Vice President, Highway Truck Drivers and Helpers Local 107, Louis J. Bottone, President, Local 107, and John E. Smalley, Defendants.

Civ. A. No. 75-2684.

United States District Court, E.D. Pennsylvania.

May 10, 1985.

Harry Lore, Philadelphia, Pa., for plaintiffs.

William J. Einhorn, Sagot & Jennings, Philadelphia, Pa., Leslie J. Ruben, Washington, D.C., for defendants.

## MEMORANDUM OPINION

EDWARD R. BECKER, Circuit Judge.[*]

This opinion addresses an application by the defendant International Brotherhood of Teamsters ("IBT") for an allowance of counsel fees and expenses in connection with the investigation and prosecution of its motion and amended motion to hold William Bender, plaintiff in the underlying action, in contempt of our November 8, 1978, order effectuating the IBT–ordered merger of Teamsters Local 1, a plaintiff in the case, with defendant Teamsters Local 107.

The relevant background of the case, which arises out of an unsuccessful suit by Local 1 and several of its officers, including Bender, to enjoin an IBT order that Local 1 merge with Local 107, is described in previous opinions and will not be repeated here. *See Local 1 (ACA), et al. v. International Brotherhood of Teamsters, et al.,* 419 F.Supp. 263 (E.D.Pa.1976) (denying preliminary injunction against merger); *Local No. 1 (ACA), et al. v. International Brotherhood of Teamsters, et al.,* 461 F.Supp. 961 (E.D.Pa.1978) (upholding merger and awarding Bender compensation for services to Local 1 before the merger), *aff'd in part and vacated in part,* 614 F.2d 846 (3d Cir.1980);[1] *Local No. 1 (ACA), et al. v. International Brotherhood of Teamsters, et al.,* 543 F.Supp. 1321 (E.D.Pa.1982) (opinion filed on remand) (finding that diversity jurisdiction was not present in the action so as to preserve Bender's favorable judgment on the salary claim but that diversity jurisdiction was present in Civil Action No. 80–0534 filed to re-assert the salary claim);[2] *Local No. 1 (ACA), et al. v. International Brotherhood of Teamsters, et al.,* No. 75–2684 (E.D.Pa., filed Oct. 5, 1982) (Memorandum Opinion), (granting in part and denying in part motion of IBT, joined in by Local 107, to hold Bender in contempt for failure to comply with November 8, 1978, merger order), *aff'd by judgment order,* 716 F.2d 891 (1983).

The IBT has sought counsel fees in the amount of $31,197.85, including expenses. For the reasons that follow, we award fees in the sum of $3,548.88, plus expenses of $297.44.

## I.

The present application stems from events leading to our October 5, 1982, opin-

[*] Of the United States Court of Appeals for the Third Circuit, sitting by designation. At the time of the proceedings adjudicated herein, Judge Becker sat as a Judge of the United States District Court for the Eastern District of Pennsylvania, either by virtue of his commission or by designation.

[1] The Court of Appeals upheld our judgment validating the merger order but set aside our salary award to Bender on the ground that we lacked pendent jurisdiction over the state law salary claim. In response to Bender's motion under 28 U.S.C. § 1653 for leave to amend his pleadings to allege diversity jurisdiction, the court remanded for consideration of Bender's allegation that diversity of citizenship afforded an independent basis of jurisdiction.

[2] In November 1984, Judge Norma L. Shapiro, to whom No. 80–0534 was assigned on remand, filed an opinion [598 F.Supp. 178] containing findings of fact and conclusions of law awarding Bender the sum of $24,963.64. That award represents a verdict of $40,801.37 for back salary less a set-off of $15,837.78 for unauthorized expenditures made by Bender on behalf of Local 1. Judge Shapiro's judgment has been appealed, *Bender v. Highway Truck Drivers & Helpers Local 107,* Court of Appeals No. 84-1753 (3d Cir.1984).

ion and order addressing IBT's motion to have Bender declared in contempt. Meaningful discussion of the fee application must be preceded by a capsule description of the grounds of that opinion, the accompanying order, and the November 8, 1978, merger order, which provides the overarching background.

The merger order provided in pertinent part that:

4. Local 1 is ordered to turn over all books, documents, property and funds presently under its control to the General President or General Secretary-Treasurer of the International Brotherhood of Teamsters or to the officers of defendant Local 107.

In December 1980, IBT moved for contempt, the merger allegedly not having been consummated because Bender had refused to deliver to IBT certain documents allegedly in his custody and had failed to inform Local 107 of the existence of a bank account with the Bowery Savings Bank of New York which purportedly contained Local 1 funds. When the documents at issue were delivered by Bender to Local 107 after the contempt motion was filed, the IBT amended its motion to seek contempt for Bender's delay in complying with our order. Local 107 joined in the amended motion[3] which asserted as an additional ground for contempt that Bender had disbursed $2,968.62 in Local 1 funds after our November 1978 order and before the Court of Appeals decision. Bender countered

that he was not in contempt because his conduct had been in good faith.

We resolved the motion in our October 5, 1982, opinion as follows:

1. We held that the bank account dispute, which had been resolved as the result of a telephone call during the course of a hearing on the matter, was moot.

2. We found that Bender's delay in turning over Local 1 records was a product of honest disagreements among the parties as to the location and custody of the documents and held that his conduct in this regard was not contemptuous.

3. We held that, in view of the clear terms of our November 1978 order, Bender had no right to dissipate funds, notwithstanding his intention to benefit the members of Local 1 through these expenditures. We therefore granted the defendants' motion on this ground alone and entered an order for the repayment of the $2,968.62, which was disbursed in contravention of the merger order.[4]

Bender ultimately purged himself of the contempt by paying $2,968.62 to Local 107's counsel.

The application of the IBT for counsel fees,[5] originally filed on March 3, 1982, sought the sum of $34,162.85 for services performed from May 1980 to February 1982. The application was amended on September 24, 1982, reducing the amount sought to $31,197.85.

---

3. All the work in connection with the contempt proceeding has been performed by IBT's attorneys. Local 107's attorney has been associated as co-counsel and has appeared in court, but the only claim for attorneys fees is from IBT's attorneys.

4. We also held that IBT's contention that Bender continued to represent members of former Local 1 after entry of the November 8, 1978, order was moot.

5. There might be some confusion as to why IBT is petitioning for attorneys fees when Bender was held in contempt for the unauthorized expenditure of funds we had ordered him to turn

over to Local 107, rather than to the IBT. Actually, our 1978 merger order directed Local 1 to turn over its books, documents, property and funds to either the IBT or Local 107. The motion for contempt was originally brought by IBT. At that time Bender challenged IBT's standing to bring the contempt petition, but we decided that IBT had standing to prosecute the complaint, because the 1978 merger order, which IBT was seeking to have enforced, was entered on IBT's counterclaim to enforce its order of merger. Memorandum Opinion September 11, 1982, at 6 n. 3. Having held that IBT had standing to prosecute the contempt petition, it follows that IBT had standing to petition for counsel fees incurred in that prosecution.

## II.

■ It is settled in the Third Circuit that "in a contempt proceeding, the court may, in its discretion, award expenses, costs and fees.... These items are restricted to reasonable amounts incurred in prosecuting the petition." *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113–14 (3d Cir.1970). There is a split among the circuits, however, over whether there must be a willful contempt of a court order before attorneys fees may be awarded.[6] The Third Circuit has not yet decided the question. *See International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 749 v. Western Pennsylvania Motor Carriers Assoc.*, 660 F.2d 76, 84 n. 13 (3d Cir.1981). However, we need not resolve the question because we find, in light of the clear mandate of our November 8, 1978, order that "Local 1 is ordered to turn over *all* books, documents, property and *funds* presently under its control" (emphasis added), that Bender willfully violated the order when he disbursed $2,968.62 in Local 1 funds, on Local 1 checks drawn on Local 1's account after the order's entry in 1978. In light of this willful violation, we are, under relevant authority, justified in assessing attorneys fees against Bender and to IBT. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967) ("in a civil contempt action occasioned by willful disobedience of a court order an award of attorney's fees may be authorized"). The award of fees, of course, is limited to a reasonable amount. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111 (3d Cir.1970).

■ Of particular relevance to the fashioning of a reasonable fee award in this case is the decision of the Third Circuit that, when awarding the costs of a contempt proceeding against the contemnor, the "district court must decide what costs are chargeable to the *only* conduct which [is] deem[ed] to be the basis for holding [a party] in civil contempt." *Quinter v. Volkswagon of America*, 676 F.2d 969, 975 (3d Cir.1982) (emphasis added). *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1942, 76 L.Ed.2d 40 (1983) (in awarding a fee pursuant to 42 U.S.C. § 1988, the district court should focus on "what is 'reasonable' in light of the level of success."). We believe that the reasoning of *Quinter* applies as well to the award of attorneys fees following a contempt proceeding. We therefore will award attorneys fees for the prosecution of a contempt proceeding only to the extent that the prosecuting party succeeded in holding a party in contempt.

In the instant case, IBT's affidavit in support of the application for attorneys fees set out three categories of work performed during the proceeding. In category C, IBT listed hours during which counsel pursued work for which no compensation was sought. We therefore will not award any fees for column C work and shall make no further reference to the figures.

Whether counsel are eligible to recover fees for category B work is more problematic. Category B, in IBT's designation, contains, *inter alia*, the hours expended on work related to the Bowery Bank account issues, and the hours expended in attempting to get Bender to turn over Local 1 records. We concluded, however, that Bender was not in contempt as a result of his alleged refusal to turn over the relevant documents to Local 1, but rather that the delay in turning over the documents was the result of an honest disagreement

---

6. The Fifth Circuit, in *Cook v. Ochsner Found. Hospital*, 559 F.2d 270 (5th Cir.1977), has decided that a non-willful contempt can result in fees being assessed against the contemnor. The court reasoned that, because damages in civil contempt cases often have the purpose of making the party damaged by the contempt whole, the willfulness of the violator does not matter. The Second Circuit, on the other hand, has intimated that a willful contempt is a prerequisite to the awarding of attorneys fees. In *Vuitton et Fils S.A. v. Carousal Handbags*, 592 F.2d 126, 130 (2d Cir.1979), the court stated that "it is appropriate for the court also to award reasonable costs of prosecuting the contempt, including attorneys fees, if the violation of the decree is found to have been willful." *See also Johnson v. United States*, 578 F.Supp. 226, 228 (S.D.N.Y.1984).

among the parties as to the documents' location and custody. At the same time we also deemed moot the claims involving the pension fund account at the Bowery Savings Bank, because the issue of the distribution of those funds was resolved during a recess of the January 5, 1982, contempt hearing. Given these findings, we conclude that under the reasoning of *Quinter* IBT is not eligible to recover attorneys fees for the time itemized in column B.

Finally, IBT's category A itemizes the hours IBT allegedly expended in its successful efforts to gain a court order to compel Bender to repay funds to Local 107. Because IBT succeeded in this discrete portion of its claims, IBT may recover a reasonable fee for the work identified in category A of its fee request.

### III.

In fashioning a reasonable award of counsel fees, the Third Circuit has consistently applied the *Lindy* lodestar approach in a variety of contexts.[7] *See, e.g., In re Fine Paper Antitrust Litigation,* 751 F.2d 562 (3d Cir.1984) (award of fees in common-fund context); *Francois v. Francois,* 599 F.2d 1286 (3d Cir.1979) (award of fees in action to rescind separation agreement), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 679, 62 L.Ed.2d 653 (1980); *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (3d Cir.1978) (award of fees pursuant to the Sherman Act); *Hughes v. Repko,* 578 F.2d 483 (3d Cir.1978) (award of fees pursuant to 42 U.S.C. § 1988); *Prandini v. National Tea Co.,* 557 F.2d 1015 (3d Cir.1977) (award of fees pursuant to Title VII). Because the lodestar method of calculating attorneys fees is used in this wide range of cases and because we can think of no rea-

son why the method should not also apply to the award of fees following a contempt proceeding, we will follow the method here.

In calculating the lodestar value, we consider only, as we have discussed, the column A figures. IBT seeks fees for four different attorneys—Barry William Levine, George Kaufmann, Leslie J. Ruben, and Judith Schaeffer—as well as for work done by law clerks and paralegals. Mr. Levine, a partner, seeks fees for 26.25 hours expended on the contempt petition. Mr. Kaufmann, who was a consultant to the law firm before joining it as a partner in January 1981, seeks fees for a total of 13.50 hours, with 11.75 hours billed as a partner.[8] Ms. Ruben, who became a partner in October 1981, seeks fees for a total of 61.25 hours, with 35.50 hours billed as a partner. Ms. Schaefer, an associate, seeks fees for one hour. There are also claims for 78 hours for work done by law clerks and 19.75 hours for work done by paralegals. The firm seeks an hourly rate of $90 for the partners' hours, $75 for the associates' hours, $30 for the law clerks' hours and $25 for the paralegals' hours.

We find the hourly rates sought by the applicants, for all classifications, to be reasonable in the context of this case. However, we find the combined total of 199.75 hours sought by the applicant for the prosecution of the contempt citation to be excessive and duplicative.[9]

We note that the sole issue on which Bender was found in contempt, the disbursement of $2,968.62 in Local 1 funds, was not included in the original motion for contempt, but was added on the amended motion for adjudication of a civil contempt, filed on October 1, 1981. After a review of the time charges submitted by IBT's coun-

---

7. The lodestar approach was initially articulated in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) ("*Lindy I*"); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (in banc) ("*Lindy II*").

8. We note that before joining Dickstein, Shapiro as a partner, Mr. Kaufmann had represented Local 107 in these drawn out proceedings.

9. All together, the application claimed that a total of 485.25 person hours had been expended on the contempt petition. Of this total, 42 hours were in column C, for which fees were not sought. Another 243.50 hours were for Column B activities, for which recovery cannot be had. *See supra* pp. 551–552. This leaves a total of 199.75 potentially compensable hours, which are dealt with in the text.

sel, we also note that the amended motion was not discussed until the September 1981 entry, under Mr. Levine's name. Therefore, work done prior to September 1981 is not compensable, since it is not related to the issue on which IBT prevailed. As a consequence, we will disallow all column A hours claimed between May 1980 and September 1981, a total of 74 hours.[10] We will allow all 6.25 hours claimed by IBT's counsel for September 1981, the month of the drafting of the amended contempt motion.

We will disallow one-half of the time sought for October 1981, because we believe that one hour is an excessive amount of time to draft a simple letter requesting a hearing on a motion.

The hours claimed for December 1981 and January 1982 revolve around the hearing held on January 5, 1982. For December 1981, counsel claims that 5.25 hours were expended scheduling and preparing for the hearing. All but one hour was attributed by counsel to column A matters. We are skeptical about that distribution. First, we conclude that a conference among three partners is not necessary to schedule a hearing, a simple ministerial act. Second, the January 5, 1982, hearing involved seven issues, four of which concerned the pension fund at the Bowery Savings Bank, an issue on which Bender was not found in contempt. Thus, instead of attributing approximately 80 percent of the time spent preparing and arguing the contempt motion at the hearing to the issue on which IBT prevailed, as IBT's bookkeepers have done, we will attribute only 35 percent of the time so spent to the matter on which IBT prevailed. Thus we will allow compensation for only two hours in December 1981. We regard this as a generous allowance of time allocable to the single issue on which IBT prevailed, given the number of other issues and claims.

The January 1982 charges present a similar problem, with one significant addition. Both Mr. Levine and Ms. Ruben attended the hearing. The Third Circuit has already stated, *see In Re Fine Paper Antitrust Litigation*, 751 F.2d 562 (3d Cir.1984), that the district court has discretion to compensate only one attorney of a firm for such a hearing, if it finds that the presence of additional counsel was unnecessary. We find that only one attorney was necessary in this simple proceeding. We will thus disallow eight hours attributed to Mr. Levine for January 1982. We will also disallow, in their entirety, the 3.5 hours claimed by Mr. Kauffman as being unnecessary and duplicative. The remaining 45.25 hours attributable to attorneys will be multiplied by .35 to conform them to the distribution of matters in the hearing, resulting in a total of 18 compensable hours. The same shall be done to the 65 hours claimed for work done by law clerks, resulting in a total of 22.75 compensable hours.

The affidavit indicates that in February 1982 three partners spent a total of 5 hours conferring with each other and reviewing a supplemental memo. We will disallow 3 hours of that time as being unnecessary and duplicative for this simple matter.

The total times allowed for attorneys are as follows:

| | |
|---|---|
| September, 1981 | 6.25 hours |
| October, 1981 | .50 |
| December, 1981 | 2.00 |
| January, 1982 | 18.00 |
| February, 1982 | 2.00 |
| TOTAL | 28.75 |

Of this total, 26.50 hours will be compensated at the partners' rate of $90 an hour. The other 2.25 hours, attributed to Ms. Ruben for September 1981, will be compensated at the associates rate of $75 an hour. Thus, the total fees awarded for work done by attorneys will be $2,553.75. The 22.75 hours attributable to law clerks will be compensated at a rate of $30 an hour. We conclude therefore that a fee award of $3,236.25 will provide IBT with reasonable compensation for its successful efforts in

---

**10.** This total represents 41.25 hours of work by attorneys, 13 hours of work by law clerks, and 19.75 hours of work by paralegals.

gaining the contempt order.[11]  Expenses of $297.44 will also be awarded.[12]

**11.**  In its final submission, IBT has sought allowance of $2,250 for time allegedly spent in obtaining the sums ($2,988.62) which the Court ordered Bender to pay to Local 107 in the October 5, 1982, order.  There was indeed a delay in obtaining the check.  This delay, however, resulted from the inability of counsel, among whom feelings ran quite high, to agree to the place and manner of payment.  IBT was certainly as culpable as Bender in causing this delay, and we therefore decline to award compensation for this aspect of the matter.

**12.**  IBT requested $423.56 for expenses related to its work on matters for which it is eligible to recover fees.  The expenses were for travel, meals, and procuring a transcript of the hearing.  Given our conclusion that the presence of only one partner at the contempt hearing was necessary, we have decided to reduce the requested travel expenses by one-half (IBT requested reimbursement for the travel costs of two attorneys) and the requested meal expenses by two thirds (IBT requested reimbursement of meal costs for three attorneys).  The transcript costs will be reimbursed in full.