**UNITED STATES of America, Plaintiff,**

v.

**Koteswara ATTALURI, Allied Environmental Services, Inc., Gary Bicknell and Mac Dewayne Overholt, Defendants.**

No. 98–CR–161–C.

United States District Court,
N.D. Oklahoma.

Jan. 13, 1999.

Order Denying Reconsideration
Feb. 2, 1999.

Kevin C. Leitch, Stephen Charles Lewis, U.S. Atty., Tulsa, OK, Andrew D. Goldsmith, Dept. of Justice, Environmental Crimes Section, Washington, DC, for U.S.

Charles Robert Burton, IV, Richard Thomas Seymour, Fred Randolph Lynn, Tulsa, OK, Koteswara Attaluri, Overland Park, KS, for Koteswara Attaluri, defendant.

Allied Environmental Services Inc., Charles Robert Burton, IV, Richard Thomas Seymour, Fred Randolph Lynn, Tulsa, OK, for Allied Environmental Services Inc., defendant.

Paul D. Brunton, Tulsa, OK, William Dixon Lunn, Tulsa, OK, Gary Bicknell, Kansas City, KS, for Gary Bicknell, defendant.

David C. Phillips, III, Tulsa, OK, Mac DeWayne Overholt, Terlton, OK, for Mac Dewayne Overholt, defendant.

## *ORDER*

H. DALE COOK, Senior District Judge.

Before the Court is defendants Attaluri and Allied Environmental Services' submission of time and charges of their counsel in relation to defendants' prosecution of civil contempt against the United States Attorney. The material facts follow:

On November 4, 1998, the government filed an Indictment naming Attaluri and Allied Environmental Services, Inc., among others, as defendants. On November 5, a press release was issued by United States Attorney, Stephen Lewis, which contained comments made by Louis Schiffer, Assistant Attorney General for Environmental and Natural Resources at the Department of Justice in Washington, D.C. The comments, published after the Indictment was filed, suggested that defendants were, in fact, guilty of the charges against them, in violation of the Court's Local Criminal Rule 57.1(C)(6). Defendants' attorney, Thomas Seymour, received a copy of the press release by facsimile from the Tulsa World. On November 6, Seymour sent a letter to Lewis demanding a retraction, advising Lewis that the press release violated Local Rule 57.1(C)(6) and the Rules of Professional Conduct. Seymour also warned that defendants would file and

prosecute a contempt motion if Lewis failed to immediately remedy the violation on Seymour's terms. Later on November 6, Seymour, dissatisfied with the government's response, filed the show cause motion, seeking to hold Lewis in contempt.

The government responded to the motion on November 20, and defendants filed a reply on November 23. The Court entered a minute order on November 24, setting the motion for hearing and directing the parties to submit all authorities which they would like the Court to consider when making its ruling. Pursuant to the minute order, defendants submitted additional materials on November 30.

An evidentiary hearing was held on December 3. The Court first determined that the issue before the Court involved civil, rather than criminal contempt. After listening to the testimony elicited by defense counsel, hearing the respective arguments of the parties, and considering the evidence presented, the Court found at the conclusion of the hearing that the press release clearly violated the Court's rules. After finding that defendants had demonstrated the various elements of civil contempt, the Court held Lewis in contempt. The Court then proceeded to fashion an appropriate remedy. The Court denied defendants' request for dismissal of the Indictment with prejudice. The Court further found that any additional press releases, as requested by Seymour, would serve no purpose, in light of the fact that Seymour, through his statements made to the press, counterbalanced the government's offending comments. Having rejected both remedies suggested by defendants as being inappropriate, the Court determined that "the government should pay whatever reasonable attorneys fees [that] have been accumulated by reason of this motion and by reason of the issuance of [the] press release." The Court concluded, however, that no further remedy is necessary. The Court then requested defense counsel to submit whatever billing deemed appropriate, and the Court requested comment from the government. The Court closed the hearing by stating that

it will make such final determination on the issue of fees as it deems just.

On December 7, defendants, Attaluri and Allied, filed their submission of time and charges for counsel. In that submission, defendants sought $25,765.00 in fees and $102.30 in costs, for a total of $25,867.30. Seymour attached an affidavit detailing the hourly rates charged by himself and two associates with respect to the prosecution of the motion for contempt: Seymour, $300; Robert Burton, $160; and Randolph Lynn, $110. Seymour further represented that these are the regular hourly rates charged by the respective attorneys and are the same rates being charged to defendants, Attaluri and Allied, for prosecuting the contempt motion. While defendants represented that the charges do not include time spent by Lynn in attending the hearing, they did not provide the Court with the total number of hours claimed for each attorney.[1]

The government filed its response to the fee issue on December 21, arguing that the fees sought by defendants for work performed with respect to the motion for contempt are excessive. The government contends that Seymour's hourly rate of $300 is out of line with the prevailing market rate in the Tulsa area, and the government further contends that the number of hours claimed is unreasonable. The government additionally complains that defense counsel failed to exercise billing judgment and utilized block billing.

■ In their reply, defendants argue that this is not a fee-shifting matter, but, rather, they contend that the remedy which the Court ordered was purely compensatory in nature. That is, defendants argue that the remedy ordered by the Court is essentially a fine designed to compensate defendants for their loss in prosecuting the motion, and that, therefore, defendants need not meet the burden of establishing either that the number of hours claimed was reasonable or that the hourly rate was reasonable. Defendants further argue that, under Oklahoma law, the fee

---

**1.** Seymour further stated that the December 7 submission does not include 3.5 hours spent compiling time and drafting papers with respect to the fee issue, but he stated that should the

government dispute the charges submitted, the charges associated with the 3.5 hours will be sought.

agreed to by lawyer and client is presumed reasonable. Hence, viewing the Court's ruling from a strictly compensatory point of view, in the nature of a fine, defendants contend that the fees sought are reasonable and proper. Defendants also request all fees incurred as a result of submitting the fee request and contesting the government's position. The total now sought is $31,867.30. Lastly, defendants argue that if the Court intended a reasonableness showing under fee shifting jurisprudence, a hearing is requested at which witnesses will be presented, and defendants further seek permission to conduct discovery.

Defendants have misconstrued the Court's ruling. As stated above, the Court held that "the government should pay whatever reasonable attorneys fees have been accumulated by reason of [defendants'] motion and by reason of the issuance of [the] press release." The Court went on to state that, once defendants submit their materials regarding fees, the Court will "make such final determination as it deems just." Hence, notwithstanding defendants' argument to the contrary, the Court certainly did not intend to provide defendants with a blank check, to be filled in with whatever amount defendants desired, payable by the government. Rather, the Court's statements make clear that the Court will only award "reasonable" fees which it "deems just." Further, the Court did not intend its award of attorney fees to be considered a fine, but, rather, intended for the government to pay defendants the *reasonable* fees incurred as a result of prosecuting the motion, in light of the fact that no other remedy was appropriate. The Court views defendants' request for $31,867.30 to prosecute the relatively simple contempt motion grossly excessive, and, therefore, the Court does not deem such amount "just." The fact that defendants may have agreed to pay counsel this exorbitant amount is not dispositive.[2] The Court will therefore proceed to determine a reasonable fee for prosecuting the motion, which the Court deems just.

"Because the lodestar method of calculating attorneys fees is used in [a] wide range of cases and because [the Court] can think of no reason why the method should not also apply to the award of fees following a contempt proceeding, [the Court] will follow the method here." *Local No. 1(ACA) v. International Brotherhood of Teamsters,* 608 F.Supp. 548, 552 (E.D.Pa.1985). Under this approach, the Court will arrive at a " 'lodestar' figure by multiplying the hours [defendants'] counsel reasonably spent on the litigation by a reasonable hourly rate." *Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1249 (10th Cir.1998). "On both those issues of reasonableness the burden of proof is on the fee applicant." *Ellis v. University of Kansas Medical Center,* 163 F.3d 1186, 1998 WL 886744 (10th Cir.1998) (quoting *Beard v. Teska,* 31 F.3d 942, 955 (10th Cir.1994)).

■ The Court's first task is to determine the number of hours reasonably spent by defense counsel in prosecuting the motion for contempt. *Case,* at 1250. Defense counsel "has the burden of proving hours ... by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* A fee "applicant should exercise 'billing judgment' with respect to a claim of the number of hours worked," and "counsel ... should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Ellis,* at 1202 (citations and quotations omitted). The Court "has a corresponding obligation to exclude hours not 'reasonably expended' from the calculation." *Id.* What constitutes a reasonable number of hours will depend on a variety of factors such as the complexity of the case, the number of strategies pursued, the responses necessitated by maneuvering of the other side, and potential duplication of services by multiple lawyers. *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir.1998) (citations and quotations omitted). "For example, if three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." *Case,* at 1250.

---

**2.** The Court notes that defense counsel recently filed motions to withdraw from this case due to defendants' inability to pay the requested fees.

Judging from the fees claimed for prosecuting the contempt motion, the Court appreciates defendants' decision in this regard.

■ A review of defense counsel's submission respecting time and charges is not helpful in determining the reasonable number of hours spent prosecuting the contempt motion. Defense counsel employs "block-billing" which makes it difficult to determine the number of hours reasonably spent on specific tasks. *Robinson,* at 1284–85. Further, defendants failed to provide the Court with the total number of hours spent by defense counsel in prosecuting this matter, apparently leaving this task of calculating hours billed by each attorney to the Court. However, a review of defense counsels' submission reveals that most of the hours spent on this matter are unreasonable and duplicative. For example, defense counsel represents that over 40 hours, or an entire typical workweek, was spent on researching contempt. Given the relatively simple nature of the motion, as well as the issues involved, the Court considers this to be sufficient evidence that the requested fees are unreasonable. Additionally, all three defense attorneys appeared at the hearing on the motion for contempt while one attorney would have certainly been sufficient to argue the motion.[3] Further, in an apparent reliance upon defense counsels' belief that the Court would award all time spent by counsel in prosecuting this matter, whether reasonable or not, defendants' submission plainly reveals that no billing judgment has been exercised by defense counsel to winnow the hours actually spent down to the hours reasonably expended.

As discussed above, the Court finds that defendants' motion for contempt and the issues involved therein were not complex. The violation of the Court's rules is clear on the face of the press release, and Lewis conceded that he knew of the Rules prohibiting such statements. Despite the simple nature of this matter, however, defendants seek to be reimbursed for hours in excess of 135, for work performed by three attorneys. The Court finds this patently excessive and unreasonable. Based on its own experiences and familiarity with the issues and procedures involved in cases such as this, the Court finds that 20 hours is a more accurate and fair representation of the total number of hours reasonably expended to prosecute such a motion, and the Court concludes that this is "just" under the circumstances.

■ The Court next considers the reasonable rate. On the hourly rate issue, the applicant may meet his burden of showing that the rate is reasonable "by way of ... satisfactory evidence—in addition to the attorney's own affidavit—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably compared skill, experience, and reputation. On that score the rates charged in private representations may be relevant but they are certainly not conclusive." *Beard,* at 955 (citations and quotations omitted). Further, "the relevant market value is not the price that the particular lawyer chosen may be paid by willing purchasers of his or her services, but rather the price that is customarily paid in the community for services like those involved in the case at hand." *Id.* at 956.

As noted above, defendants seek an hourly rate of $300 for services performed by Seymour, $160 for those performed by Burton, and $110 for those performed by Lynn. While the rates charged by Burton and Lynn are arguably reasonable, the rate charged by Seymour in prosecuting this simple matter is clearly unreasonable. While defendants had the opportunity in their original fee submission and later in their reply to attempt to justify as reasonable Seymour's hourly rate, they did not do so. And, from the Court's own experience, defendants are incapable of demonstrating that Seymour's hourly rate is in line with "the price that is customarily paid in the community for services like those involved in the case at hand." Thus, in light of the simplicity of the present matter, and based on the submissions of the government, as well as the Court's own experience and familiarity with fees charged by attorneys in this district in prosecuting similar matters, the Court finds that an hourly rate of $150 in prosecuting this matter is reasonable and just.

Defendants state that if the Court employs fee shifting jurisprudence to determine the

3. Recognizing the unreasonableness of having three attorneys appear at the hearing, defendants state that the charges do not include time spent by Lynn in attending the hearing, as two lawyers were required, not three.

reasonable fee, a hearing is requested at which witnesses will be presented. Defendants further request permission to conduct discovery. However, the Court will not permit this matter to explode into "a second major litigation." *Beard,* at 958 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Defendants had adequate opportunity, both in their original submission and reply, to demonstrate the reasonableness of their request, and the Court will not permit defense counsel to cause defendants to incur additional fees, which defendants will seek to pass on to the government, in an effort to prove that the fees already incurred are reasonable.

Accordingly, the Court hereby awards defendants the sum of $3,000, payable immediately by the government.

IT IS SO ORDERED.

### *ORDER*

Before the Court is defendants Attaluri and Allied Environmental Services' motion requesting the Court to reconsider its earlier Order awarding defendants the sum of $3,000 in attorney fees.

The relevant facts in this case are outlined in the Court's prior Order addressing this matter, entered on January 13, 1999, and the Court will not restate those facts here. Defense counsel, Thomas Seymour, brings this motion criticizing the Court's award of fees on numerous grounds and asks that the Court "award attorney fees as applied for." Seymour represents that he is no longer seeking fees for work performed seeking fees, and, thus, the Court assumes that he is now seeking his original request of $25,765.00 in fees.

Pursuant to the Court's customary practice, the Court has thoroughly reviewed all the materials submitted in support of the motion for reconsideration, and, despite Seymour's concerns to the contrary, the Court is fully aware of all relevant facts. In fashioning the fee award, the Court did not simply "pick a number for a fee that the Court wants," as Seymour suggests. Rather, the Court carefully considered many factors when it decided upon the reasonable number of hours and reasonable hourly rate, such as, *inter alia,* the overall complexity of the underlying dispute, the length of time between the issuance of the offending press release and the final order of contempt, the informal attempts to settle the dispute without court intervention, the defense presented, the amount and thoroughness of materials presented to the Court in support of the motion for contempt, the length and complexity of the motion hearing, the clear nature of the violation, and the Court's own familiarity with the prosecution of similar motions. Given all the factors involved, and based on the materials presented by defendants and the government, along with the Court's own familiarity with the underlying issues and effort involved in prosecuting such a matter, the Court concluded that 20 hours was a fair representation of the total number of hours reasonably expended to prosecute the motion for contempt, and the Court concluded that $150 represented a reasonable hourly rate, for a total fee award of $3,000. The Court found in its prior Order, and it finds now, that $25,765.00 is grossly excessive.

Further, notwithstanding Seymour's repeated argument that this matter was far from simple, the Court continues to view this matter as involving relatively simple, non-complex issues. The only true issues in the dispute were whether the press release violated the Court's Local Criminal Rules, and, if so, whether the United States Attorney should be found in contempt for knowingly publishing such press release. Of course, a separate issue concerning the appropriate remedy arose upon the finding of contempt. As discussed in the Court's prior Order, the Court found that the nature of the violation was plain from the face of the press release, and the matter was quickly resolved and remedied with a contempt finding within one month of the issuance of the press release.[1]

---

1. The present case is therefore unlike *Robinson v. City of Edmond,* 160 F.3d 1275, 1282 (10th Cir. 1998), in which the Circuit found that the district court clearly erred in finding that the case was "fairly simple." The present case merely involved the issue of whether a certain press release, issued by the United States Attorney, violated a certain Local Criminal Rule, and whether the United States attorney should be found in contempt for issuing the release. And, the violation here was plain from the face of the press release. In contrast, *Robinson,* involved very

As the Court noted in its prior Order, despite this relatively quick and uncomplicated resolution to the parties' dispute, defendants sought to be reimbursed for hours in excess of 120, for work performed by three attorneys. For the following reasons, and for the reasons previously outlined in the Court's prior Order, the Court concludes that full compensation for fees incurred is plainly inappropriate, and the Court further reaffirms its fee award of $3,000.

It is well settled that the "sanction of civil contempt serves two remedial purposes: (1) to enforce compliance with an order of the court, and (2) to compensate for losses caused by the noncompliance. The sanctions to be imposed are to be remedial or coercive, but not penal, and are to be adapted to the particular circumstances of each case."[2] *NLRB v. Monfort, Inc.*, 29 F.3d 525, 528 (10th Cir.1994). Thus, once the Court determined that the United States Attorney acted in contempt of Court, the Court was faced with the difficult task of fashioning an appropriate remedy which would serve the remedial purposes of civil contempt.[3] In the present case, there was no evidence that the government or the United States Attorney would engage in future violations of the Court's Local Criminal Rules, and, therefore, there was no need to impose coercive sanctions to enforce compliance with the Court's Rules. With respect to compensation for losses caused by reason of the issuance of the press release, the Court recognizes that full compensation for harm occasioned by a contumacious act should normally be awarded, and the Court recognizes that its discretion in determining a compensatory award is limited. *See G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 41 (1st Cir.1980) (court has little or no discretion with respect to amount of fine for compensating actual damages suffered as a result of the

contumacious behavior). Hence, when money damages are proven, they should normally be allowed in full.[4] As for a compensatory remedy, defendants requested either that the criminal action against them be dismissed or that the government release further curative statements to the press, but defendants made no request for money damages, and they offered no evidence that they suffered any other type of compensable harm, monetary or otherwise, as a result of the press release. The Court found that dismissal of the indictment was wholly improper, and the Court additionally found that further statements to the press would serve no purpose, given Seymour's counterbalancing statements which he made to the press following the publication of the offending release.

Moreover, Seymour, himself, recognizes that defendants were, in effect, fully compensated by the very finding of contempt. Seymour states in his present motion that, "contempt was found, and voir dire of the jury was provided for. The result was complete success. The case was not dismissed, but most significant relief was awarded. Overall relief is the key, ... the 'result' was 'complete vindication'. Mr. Lewis was held in contempt of court." Thus, defendants received their requested compensation by virtue of the fact that the United States Attorney was held in contempt.

After considering all remedies potentially available in a contempt action, the Court concluded that no traditional civil contempt remedy was appropriate: a coercive order was clearly not required and, as Seymour admits, defendants received the compensation they sought by virtue of the contempt finding. The Court therefore determined, in its discretion, that, since no remedy was tru-

---

complex constitutional issues and was a case in which "thoughtful jurists strongly disagreed." *Id.* It seems unlikely that "thoughtful jurists" would "strongly disagree" with this Court's findings regarding the violation of the Local Rule and the issue of contempt.

2. As more fully addressed below, however, full compensation for harm done does not include attorney fees incurred as a result of prosecuting a motion for contempt. A contrary conclusion would necessarily run afoul of the American Rule

that fees are not normally awarded to the prevailing party.

3. This task was made difficult by virtue of the fact that no traditional civil contempt remedy seemed appropriate in the instant case. Thus, the Court, sua sponte, ordered that "reasonable" attorney fees be awarded.

4. However, a compensatory award based on anything other than proof of loss becomes a penalty which is proper only under criminal contempt.

ly appropriate, an award of reasonable fees would be ordered.

In light of the foregoing, the Court does not understand how Seymour can now suggest that defendants did not receive adequate compensation. By not asking for money damages, and by not providing the Court with any evidence that defendants had suffered damages as a result of the violation, Seymour must have understood that the Court, after finding contempt, might provide no additional remedy to defendants. That is, Seymour surely had to expect that the Court, even upon a finding of contempt, would not grant defendants' extraordinary request of dismissal, nor order the government to issue additional statements to the press. With this understanding in mind, Seymour must have appreciated the possibility that defendants would walk away with nothing more than the satisfaction of obtaining a finding of contempt, which, as Seymour now states, was complete vindication. Thus, it appears that defendants would have been pleased with this result, even if they had nothing else to show for it. Indeed, defendants have not argued, nor have they even suggested, that this Court's rulings, issued at the conclusion of the hearing on contempt, are erroneous in any manner. Defendants do not argue that the Court erred in not awarding any of the requested remedies or similar compensation. Defendants' sole argument, strenuously advanced by Seymour, is that the award of fees is too low. If not for the fortuity of the Court ordering the payment of fees, which had not been requested or contemplated by the parties, there is no indication that defendants would have filed any post-hearing motions attacking or otherwise criticizing the Court's rulings on either the issue of contempt or the appropriate remedy. Further, had the Court not awarded a reasonable fee, Seymour would have been forced to turn solely to his clients to recoup his fees, since it is clear that the prevailing party in a contempt action is not entitled to an award of fees and such fees are not a traditional component of the compensatory remedy.

Recognizing that fees are not normally awarded in contempt actions, Seymour readily admits that "the possibility of an award of attorney fees did not even appear on the 'radar screen' of plausible possibilities." Although Seymour acknowledges that defendants essentially received everything they asked for, and he admits that the possibility of receiving an award of fees never occurred to him, he now demands that defendants be "fully compensated" for the fees which they incurred as a result of prosecuting the motion for contempt, and he argues that the Court erred in reducing the claimed fees.[5] Seymour repeatedly suggests that in order to fully "compensate" defendants for the harm done as a result of the issuance of the offending press release, a full award of fees must be ordered. Seymour argues that, in order to fully "compensate" them for their "loss", reasonableness must be determined by looking solely at the amount which defendants agreed to pay, and, for this proposition, he cites Oklahoma law. However, as discussed above, no monetary loss, occasioned by the publication of the press release, was shown, no monetary compensation was requested by defendants in their motion for contempt, and the only money now sought relates strictly to attorney fees. While full compensation is generally required for proven losses that are shown to have been directly caused by a contumacious act, as explained above, full compensation for attorney fees which arise out of the prosecution of a contempt motion is not required. Indeed, the very awarding of any attorney fees in contempt actions is not required, but, rather, is entirely discretionary. Thus, Seymour apparently confuses an order designed to "fully compensate" the victims of contempt for their proven loss resulting from a contumacious act with an award of attorney fees. "An award of . . . attorney fees in civil contempt is . . . *wholly independent* of an award

---

5. Seymour's present motion reveals an apparent urgency behind the request for reconsideration: it appears that Seymour has not been paid by defendants for work done on their behalf, and he ultimately withdrew due to failure to pay. Thus, it would seem that because Seymour has found a source of payment of his fees, i.e., the United States government, he intends to zealously pursue the fee matter, which is evidenced by the degree of effort put into the motion for reconsideration and its voluminous attachments.

of compensatory damages." *Shakman v. Democratic Organization of Cook County,* 533 F.2d 344, 351 (7th Cir.1976) (emphasis added). *See also In the Matter of the Grand Jury Subpoena,* 690 F.Supp. 1451, 1455 (D.Md.1988) (decision as to amount of fees falls within equitable discretion of court, and award of fees is independent of any other sanction imposed).

Simply stated, the Court never intended the fee award to compensate defendants for actual losses occasioned by the publication of the press release, and the Court therefore never intended the award of fees to be considered a fine.[6] *See Law v.. NCAA,* 134 F.3d 1438, 1442 (10th Cir.1998) (where compensation is intended, a fine is imposed, and such fine must be based upon evidence of complainant's actual loss). As noted, defendants never produced any evidence of actual monetary loss which resulted as a result of the publication of the offending press release, and they never requested money damages. Accordingly, no monetary compensation for actual loss was awarded by the Court.[7] Finding that no coercive or compensatory remedy was proper, the Court merely held that the government must pay "whatever reasonable attorneys fees have been accumulated by reason of [defendants'] motion and by reason of the issuance of [the] press release." To conclude that this award of fees amounted to a compensatory fine designed to "fully compensate" defendants for their loss resulting from the issuance of the press release confuses the distinction between a compensatory award, in which full compensation is required for a proven loss, and the award of fees, which is a discretionary award based on a standard of reasonableness. *See Weitzman v. Stein,* 98 F.3d 717, 719–20 (2d. Cir. 1996) (compensatory goal of civil contempt can only be met by awarding any proven

damages to plaintiff, but, where district court decides to award fees, it enjoys considerable discretion in determining the appropriate amount of the fee); *G. & C. Merriam Co.,* 639 F.2d at 41 (while court has little or no discretion with respect to amount of fine for compensating actual damages, the awarding and amount of appropriate fees is within court's discretion); *In the Matter of the Grand Jury Subpoena,* 690 F.Supp. at 1453 (once complainant demonstrates actual losses stemming from the contumacious behavior, court is not free to exercise its discretion and withhold an order awarding compensatory damages, except that a remedial award of attorney's fees is committed to the sound discretion of the district court). The only issue before the Court, then, is the determination of a "reasonable" fee.

Seymour repeatedly suggests that whatever amount his clients agreed to pay in fees for the prosecution of the contempt motion should be awarded to fully compensate them for their losses suffered as a result of the contumacious act and should be considered per se reasonable under Oklahoma law. As discussed above, however, the remedy of "full compensation" for a proven loss does not include compensation for fees incurred as a result of prosecuting the contempt motion, as such would run afoul of the American Rule. Further, simply because the Court may, in its discretion, issue a fee award in a contempt proceeding, it does not follow that the determination of fees should be treated differently than if the fees had been awarded under a fee-shifting statute. Surely, had this case been brought under the civil rights laws and defendants had completely prevailed, Seymour would not be arguing for a full award of all fees charged to his clients in prosecuting the matter, irrespective of reasonable-

---

**6.** Thus, Seymour's concern that the fee awarded by the Court amounts to a "judicial determination of an appropriate fine" not based on proof of actual loss, which is a criminal remedy, is unavailing. Seymour's argument would have merit if defendants proved an actual monetary loss caused by the contumacious act, and the Court, ignoring such evidence, simply arrived at a fine below or above that of the proven loss. In the present case, however, the fee award was not intended to be a compensatory fine, and, as such, the Court did not impose a criminal remedy in arriving at a reasonable fee, even though such

fee determination is below that sought by defendants.

**7.** It is undisputed that while the press release may have harmed defendants to some extent, in that it essentially labeled them guilty of crimes for which they were indicted, such harm did not involve a monetary loss. This is clearly evidenced by the fact that defendants never sought money damages in their motion for contempt, but, rather, they only sought non-monetary relief, i.e., the dismissal of the criminal indictment and the publication of a curative press release.

ness. Rather, he would have conceded, as he must, that such a fee determination is subject to a reasonableness inquiry, regardless of the amount which the clients actually agreed to pay. The Court can envision no reason why the fee determination in the present case should proceed any differently. *See Local No. 1(ACA) v. International Brotherhood of Teamsters,* 608 F.Supp. 548, 552 (E.D.Pa. 1985) (employing lodestar method of calculating attorneys fees in contempt proceeding).

In determining a reasonable fee in the present case, the Court employed the customary and well established lodestar method. Under this approach, the Court arrived at the " 'lodestar' figure by multiplying the hours [defendants'] counsel reasonably spent on the litigation by a reasonable hourly rate." *Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1249 (10th Cir.1998). Seymour's argument that what is "reasonable" is determined on the basis of what the client is obligated to pay plainly ignores the countless federal decisions which hold that the fee which the client agreed to pay is, at most, just one factor in the overall determination of reasonableness. *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983) (attorney's customary rate is a relevant but not conclusive factor). *See also Ellis v. University of Kansas Medical Center,* 163 F.3d 1186, 1998 WL 886744 (10th Cir.1998) (relevant market value is not necessarily the price which a party's lawyer charged to prosecute the case, but, rather, the market value is the price customarily paid in the community for like services). If the fee that the client agree to pay were considered the reasonable fee, per se, there would be no need to employ the long recognized lodestar formula of determining a reasonable fee. Thus, for the reasons stated in the Court's prior Order, and the reasons stated above, the Court found and concluded that 20 hours represented a fair and accurate amount of time reasonably required to prosecute this matter,[8] and the Court further found and concluded that an hourly rate of $150 was reasonable. The fact that the United States Attorney was the alleged contemnor was taken · into consideration by the

Court and this fact does not alter the Court's findings and conclusions regarding the appropriate fee.

The recent case of *Ellis,* supra, is instructive on determining the reasonable number of hours expended prosecuting a case. The plaintiff in *Ellis,* an employee of the defendants', complained that the defendants violated her constitutional and civil rights by transferring her to the day shift when the defendants knew that she was scheduled to begin attending college during the day. The plaintiff initiated consultations with a civil rights attorney on August 1, 1995, and she formally retained him on August 21. Thereafter, her attorney made several attempts to informally settle the dispute, he filed a complaint with the Kansas Human Rights Commission, and he ultimately filed a federal lawsuit and motion for temporary restraining order. The attorney unsuccessfully argued the plaintiff's TRO motion at a hearing, and, on August 30, accepted settlement on the plaintiff's behalf. The Circuit held that the district court did not clearly err in reducing the requested number of hours spent prosecuting the case to twenty. In the present case, it appears from the materials submitted that less necessary work was involved, and fewer issues were raised, in the prosecution of the contempt motion than that involved in *Ellis.*

In seeking a full award of fees, Seymour relies on *Robinson,* supra, for the proposition that when a plaintiff achieves most or all of what she aimed for, "her lawyer should receive 'a fully compensatory fee.'" *Id.,* 160 F.3d at 1283. However, Seymour overlooks a few important points behind the *Robinson* decision. First, the court, in making its statement regarding a fully compensatory fee, did not abandon the requirement that the fee applicant prove that the claimed rate and number of hours are reasonable. Rather, the court expressly reaffirmed that very principle: "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'"[9] *Id.* at 1281. Further, the

---

8. And, when arriving at this number, the Court did, in fact, consider the time spent by defense counsel in submitting the fee request.

9. Indeed, the reasonableness requirement was reaffirmed by the Circuit in *Ellis* after *Robinson* was decided.

court emphasized that the reasonableness inquiry with respect to the number of hours expended "is controlled by the overriding consideration of whether the attorney's hours were 'necessary' under the circumstances." *Id.* In this respect, the "prevailing party must make a 'good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Id.* As the Court discussed in its prior Order, and as evidenced by the number of claimed hours involving the research of contempt, this was not done here. Second, the court in *Robinson* expressed concern that attorneys representing civil rights plaintiffs be awarded a fully compensatory fee so that competent lawyers will agree to take such cases. *Id.* The court stated, "It goes without saying that if a court's compensation is not adequate to match what the market will bear for a lawyer's services, then competent lawyers will go elsewhere to offer their services. *Such a result would do irreparable damage to our system of private enforcement of federal civil rights.*" *Id.* (emphasis added). However, the present case does not involve the enforcement of civil rights, and, therefore, the rationale behind ensuring a fully compensatory fee in order to further the purposes of the civil rights laws does not apply here. Moreover, victims of contempt are not "entitled" to a reasonable fee, as are civil rights plaintiffs, but, rather, such an award of fees is purely discretionary.

Accordingly, for the reasons set forth above, and for the reasons stated in the Court's prior Order, the Court concludes that the fee award of $3,000 represents a reasonable fee for the prosecution of defendants' contempt motion. Defendants' motion to reconsider is therefore DENIED.[10]

---

10. With respect to the request for a hearing, Seymour represents that everything that would be presented by live testimony at a hearing has been presented to the Court. Since the Court has thoroughly reviewed the submissions, there is no need for a hearing on the matter.